RECEIVED
JAN 30 2008
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HERBERT JACK GOLDEN; ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:08-CV-70-WKW |
| ) | |
| SUN LIFE FINANCIAL, INC.; ) | |
| SUN LIFE ASSURANCE COMPANY OF ) | |
| CANADA; ) | |
| PEER REVIEW ANALYSIS, Inc.; ) | |
| MCMC, llc; ) | |
| THE SEYDEL COMPANIES EMPLOYEE ) | |
| BENEFIT PLAN; ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a)(1), in order to secure benefits due to the Plaintiff through an Employee Welfare Benefit Plan and/or an Employee Pension Plan, under the terms of which the Plaintiff is a defined beneficiary participant, or otherwise qualified for benefits, and to further enjoin those acts or practices which violate the Defendant's fiduciary duties owed to the Plaintiff as set forth within 29 U.S.C. § 1104. Plaintiff seeks any and all benefits to which he may be entitled should this Court determine he is "disabled", to include long term and short term disability benefits; pension benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies; and any other benefits available under the named plans.



## II. JURISDICTION

2.  Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132 (e) confers Jurisdiction upon the District Courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U. S. C. § 1001, et. seq. Jurisdiction is further appropriate under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity exists between the parties.

## III. VENUE

3.  Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Middle District of Alabama pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within the Middle District of Alabama.

4.  Furthermore, venue is appropriate under 28 U.S.C. § 1391(b)(2) in that the Defendants were doing business in the State of Alabama, and upon information and belief, a substantial part of the events giving rise to the Plaintiff's claims occured within this District.

## IV. PARTIES

5.  Plaintiff, Herbert "Jack" Golden[1], is a resident citizen of Elmore County, Alabama.

6.  Defendant Sun Life Assurance Company of Canada ("SLACC") is, upon information and belief, a Delaware corporation with its principal place of business in Delaware.

7.  Upon information and belief, the Defendant SLACC is a plan "fiduciary" in the

---

[1] This document has been drafted by counsel for Plaintiff on Plaintiff's behalf based on facts presented by Plaintiff but does not support the inference that Plaintiff has legal training or skills necessary to understand the legal terminology or theories used herein.

2

employee welfare benefit plan and/or pension plan and is an insurance company authorized to transact the business of insurance in the State of Alabama.

8. Defendant SLACC further served as underwriter for the employee welfare benefit plan and/or pension plan and may be served with process by serving The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

9. Defendant Sun Life Financial, Inc. is, upon information and belief, a Delaware corporation of which Sun Life Assurance Company of Canada is a subsidiary and whose principal place of business is in Massachusetts.

10. Upon information and belief, the Defendant Sun Life Financial, Inc., is a plan "fiduciary" under the employee welfare benefit plan and is not authorized to transact business in the State of Alabama.

11. Upon information and belief, Defendant Sun Life Financial, Inc., served as underwriter and/or claims administrator for the employee welfare benefit plan, and may be served with process by serving The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

12. Upon information and belief, the Defendant Sun Life Financial, Inc., exercised authority or control respecting the management or disposition of the plan assets, and is therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

13. Furthermore, and upon information and belief the Defendant Sun Life Financial, Inc. provides services to the plan(s) at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

14. Defendant MCMC, llc is, upon information and belief, a Delaware corporation with its principal place of business in Delaware.

15. Upon information and belief, the Defendant MCMC, llc is a plan "fiduciary" in the employee welfare benefit plan and/or pension plan and is not authorized to transact business in the State of Alabama.

16. Furthermore, and upon information and belief the Defendant MCMC, llc provides services to the plan(s) at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

17. Upon information and belief, Defendant MCMC, llc may be served with process by serving Registered Agent Solutions, Inc., 32 W. Loockerman St., Suite 201, Dover, DE 19904.

18. Defendant Peer Review Analysis, Inc. is, upon information and belief, a Delaware corporation with its principal place of business in Delaware.

19. Upon information and belief, the Defendant Peer Review Analysis, Inc. is a plan "fiduciary" in the employee welfare benefit plan and/or pension plan and is not authorized to transact business in the State of Alabama.

20. Furthermore, and upon information and belief the Defendant Peer Review Analysis, Inc. provides services to the plan(s) at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

21. Upon information and belief, Defendant Peer Review Analysis, Inc. may be served with process by serving The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

22. The Defendant The Seydel Companies Employee Benefit Plan is an "employee welfare benefit plan" and/or "employee pension plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process by serving The Seydel Companies, 244 John B. Brooks

Road, P.O. Box 169, Pendergrass, CA 30567.

## V. STATEMENT OF FACTS

23.     At all times relevant, Plaintiff was insured under The Seydel Companies Employee Benefit Plan.

24.     From approximately 1996 until Plaintiff's disability in 2001, Plaintiff was employed by Seydel International as its President and COO. Plaintiff's occupation required foreign travel on a frequent basis.

25.     Plaintiff's salary at the time of his disability was $120,000 per year plus commissions. In 2000, Plaintiff earned $227,768.00 in commissions, for a total yearly salary of $337,894.28.

26.     On August 21, 2001, Plaintiff underwent a left heart catheterization, coronary angiography and left ventriculography.

27.     Plaintiff's diagnoses on August 21, 2001, included artherosclerotic coronary disease with significant obstruction and left ventricular dysfunction.

28.     Plaintiff's primary treating physician's, Dr. Ross Davis', clinical records dated September 4, 2001 reflect that Plaintiff "remains class III[2]" and indicates a plan including "No foreign travel!"

29.     As a result of Plaintiff's disabilities, he filed a claim for Long Term Disability Benefits with Defendants on The Seydel Companies Employee Benefit Plan on or about September 24, 2001. Plaintiff's claim for LTD Benefits listed his disability date as August 20, 2001, the cause of his disabling condition as stress related to his job and the symptoms of his

---

[2] "Class III" refers to the New York Heart Association's rating of functional capacity indicating that the patient (here Plaintiff) suffers from marked limitation of activity and is comfortable only at rest.

disabling condition as including "shortness breath, chest tightness, indigestion and chest pain."

30. Plaintiff submitted an Attending Physician's Statement in support of his Long Term Disability claim completed by his primary treating physician, Dr. Davis, which listed Plaintiff's diagnoses as "CAD[3] [and] CHF[4]," his American Heart Association Functional Capacity as "Class 3 (Marked Limitation)" and further indicated that he was not capable of working in any occupation on either a full-time or a part-time basis and that these limitations will "always" apply.

31. The Policy provides:

> **Total Disability or Totally Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.

32. The Policy also provides that "'**Gainful Occupation**'" means employment that is or can be expected to provide an Employee with an income of at least 60% of his Indexed Total Monthly Earnings."

33. Defendants' internal documents reflect that they calculated 60% of Plaintiff's pre-disability income to be $136,000 per year.[5]

34. Defendants requested review of Plaintiff's claim by Dr. George Philippides, who wrote to Defendants by letter dated November 24, 2001, as follows:

> [T]he emotional and physical stress that the [Plaintiff's] job imposes on Mr. Golden is detrimental to his cardiovascular health. The stress of travelling, especially travelling by air, will increase the chance of this patient having poorly

---

[3] Coronary Artery Disease
[4] Congestive Heart Failure
[5] Defendants miscalculated this figure by using the wrong "yearly earnings" figures.

controlled hypertension and places him at risk for having arrhythmia. I also feel that the time and effort spent travelling all over the world as is required by his job does reduce the chance that he will spend the required time and effort to improve his medical condition.

Finally, and most importantly, I generally feel that the responsible clinician, in this case Dr. Davis, is the best judge of what sorts of endeavors are safe for patients"

35.     An Echocardiographic Report dated January 7, 2002, reflects Plaintiff was suffering from congestive heart failure, left ventricular hypertrophy with inferolateral hypokinesia, possible coronary artery disease, mitral regurgitation and thickened aortic valve.

36.     An Attending Physician's Statement completed by Dr. William R. Davis, Plaintiff's cardiologist, dated August 1, 2002, reflects that Plaintiff is unable to work and is not capable of working in another occupation in either a full time or part time basis.

37.     Defendants requested another review of Plaintiff's claim by Dr. George Philipedes, who responded by letter dated October 16, 2002 that if Dr. Davis, Plaintiff's treating physician, "feels that the [Plaintiff] is no longer class I, that his heart rate and blood pressure are difficult to control and that air travel make this endeavor more difficult or that he is prone to arrhythmia, then [he] would reverse [his] opinion" that "it is not clear that air travel should be contraindicated."

38.     On October 29, 2002, Dr. Davis indicated to Defendants, per their inquiry, that Plaintiff possessed "limited exercise" capacity, a New York Heart Association class of III, and stated that air travel was particularly stressful to Plaintiff.

39.     Dr. Ross Davis, Plaintiff's primary physician, wrote to Defendants in a letter dated January 13, 2003, that "[Plaintiff] has Clinical Class 2 to Class 3 congestive heart failure symptoms in spite of relatively optimized therapy. He is clearly disabled for continuation in his

current employment."

40. Dr. Davis further points out in his January 13, 2003 letter that his clinical assessment and diagnosis of Plaintiff is based in part on "the general appearance of [Plaintiff] and [his] assessment of [Plaintiff's] response to the minimal exertion that is required to move about the office."

41. A February 7, 2003 internal document from Defendants contains the following Peer Review Analysis recommendation:

> The claimant's current medical condition should be classified as follows; Hypertensive Cardiovascular Disease Left ventricular hypertrophy, Left ventricular systolic dysfunction Congestive Heart Failure New York Heart Assoc. Clinical Class I-II, Artherosclerotic Cardiovascular Disease, Coronary Artery Disease, Stable Angina New York Heart Assoc. Clinical Class I. The claimant is not able to resume his high pressure, stressful occupation as President of Sydel International. The claimant should be capable of working at a sedentary job or a job that requires light exertion. The claimant is capable of flying on commercial airlines however frequent travel by air, especially long flights would need to be avoided. Travel would need to be restricted to destinations that had modern medical facilities readily available.

42. Defendants notified Plaintiff by letter dated June 16, 2003 that the definition of Total Disability would change to an "any occupation" standard on November 18, 2003.

43. Plaintiff submitted an Attending Physician's Statement completed by Dr. William R. Davis and dated June 24, 2003, which indicated Plaintiff's diagnoses as "414.01[6], 272.4[7], 428.0[8] and 401.9[9][.]"

44. Dr. Davis' June 24, 2003 AP Statement listed Plaintiff's Physical Impairment as a Class 3, which denotes "[s]light limitation of functional capacity; capable of light work."

---

[6] ICD9 414.01 indicates coronary artherosclerosis
[7] ICD9 272.4 indicates "other and unspecified hyperlipidemia."
[8] ICD9 428.0 indicates "congestive heart failure."
[9] ICD9 401.9 indicates an unspecified diagnosis in the category of hypertensive disease.

45. Defendants notified Plaintiff by letter dated August 26, 2003 that "[b]ased on the medical records [he is] unable to perform all the material and substantial duties of any occupation as defined by [the] policy's provisions" and they had therefore approved his claim for long term disability benefits beyond the change in definition of Total Disability.

46. On December 5, 2003, Plaintiff's diagnoses continued to include coronary artery disease, cardiomyopathy, mitral regurgitation, hypertension and hyperlipidemia.

47. On December 30, 2003, Plaintiff underwent a UAB Hospital radiology screening, which revealed coronary arterial calcification and ischemic heart disease.

48. In July 2004, Plaintiff suffered an L3-4 disk herniation which required an L3-4 laminotomy and microdiskectomy, which was performed on July 15, 2004.

49. A July 12, 2004 physical revealed cardiac arrhythmia.

50. Plaintiff's prescribed medications in July 2004 included Lipitor, Analopril, Furosemide, Spironolactone, Prednisone, Lasix, Prevacid, Coreg, Zetia, Lortab, Soma, Neurontin and Celebrex.

51. Plaintiff submitted an Attending Physician Statement completed by Dr. William R. Davis, dated August 26, 2004, in which Dr. Davis listed Plaintiff's diagnoses as "CAD, CHF (414.01, 428.0)."

52. Dr. Davis' August 26, 2004 AP Statement further indicated that Plaintiff was permanently unable to work in any occupation in either a full-time or a part-time basis.

53. In February 2005 Plaintiff's numerous diagnoses included obstructive coronary artery disease, cardiomyopathy, mitral regurgitation, hyperlipidemia, hypertension, carotid

bruits and herniated nucleus pulposus,[10] which caused subsequent nerve injury.

54. Plaintiff's prescribed medications as of February 2005 included Enalapril[11], Lasix[12], Spironolactone[13], Coreg[14], Lipitor[15] and Zetia[16].

55. Plaintiff filed for Social Security disability benefits and on April 29, 2005, the Social Security Administration found Plaintiff disabled as of June 1, 2004. Plaintiff was therefore awarded $9,081.75 for disability benefits from November 2004 through April 2005. Plaintiff thereafter received $1,920.00 per month for disability benefits from the Social Security Administration.

56. As a result of Plaintiff's Social Security award, Defendants demanded that he repay them $8,826.75 for "overpayment."

57. Plaintiff repaid this "overpayment" in the amount of $8,826.75 by check dated May 11, 2005.

58. Plaintiff submitted an Attending Physician's Statement ("AP Statement") completed by Dr. William R. Davis, dated June 8, 2006, in which Dr. Ross noted "Pt is unable to work" and "Employee/pt is unable to return to work."

59. Dr. Davis' June 8, 2006 AP Statement further listed Plaintiff's diagnoses as

---

[10] Herniated nucleus pulposus is commonly known as a slipped disk.
[11] Enalapril is prescribed to treat high blood pressure, heart failure and other heart problems. Common side effects of Enalapril include dizziness, lightheadedness and tiredness.
[12] Lasix is used to treat high blood pressure associated with heart failure. Common side effects of Lasix include dizziness, lightheadedness and sensitivity to sunlight.
[13] Spironolactone is used to treat swelling and fluid retention in patients with congestive heart failure. Common side effects of Spironolactone include confusion, dizziness, drowsiness and headache.
[14] Coreg is used to treat high blood pressure and certain types of heart failure. Common side effects of Coreg include dizziness, dry eyes, headache, fatigue, lightheadedness, nausea and weakness.
[15] Lipitor is used to lower high cholesterol and to reduce the risk of hospitalization for congestive heart failure in some patients. Common side effects of Lipitor include headache and weakness.
[16] Zetia is used to treat high blood cholesterol. Common side effects of Zetia include dizziness, headache and tiredness.

"CAD, cardiomyopathy, HTN[17]" and also noted that "[Plaintiff's] back pain is worst complaint[.]"

60. Sun Life thereafter hired a private investigator to investigate Plaintiff.

61. This private investigator submitted a report to Sun Life, dated August 3, 2006, which detailed the findings of an investigation of the plaintiff from July 31, 2006 through August 1, 2006, and noted the Plaintiff "seemed to have trouble breathing after conversing." The report further noted, with the exception of two trips by automobile, no outside activity on behalf of the Plaintiff.

62. Defendants' internal records dated November 22, 2006, reveal that Dr. Bill Hall, one of Defendants' medical consultants, recognized that Plaintiff's then "[p]rincipal symptom of shortness of breath [is] attributed to congestive heart failure" and "agree[d] with Dr. W. Ross Davis' assignment of class four physical impairment to [Plaintiff]."

63. Defendants notified Plaintiff by letter dated February 15, 2007, that they had completed their review of his claim for disability benefits and "determined that benefits are no longer payable under the terms of the Policy."

64. Plaintiff requested, by letter dated June 18, 2007, that Defendants review their denial of his benefits.

65. Plaintiff included with this June 18, 2007 correspondence letters from Dr. Ross Davis, Plaintiff's treating cardiologist, and Dr. Randal Herring, Plaintiff's clinical chiropractor.

66. The letter provided by Dr. Ross Davis provides that Plaintiff "is now and has been for some time totally and permanently disabled for any occupation, whether it be sedentary or active."

---

[17] HTN is a medical abbreviation denoting, among other things, hypertension.

67. The letter provided by Dr. Herring provides that Plaintiff "is totally disabled from both spinal and cardiac instability. He would be such a high risk of future health problems that I certainly would not advise employment at any job function."

68. Defendants notified Plaintiff by letter dated August 10, 2007 that they had "determined that the decision to terminate benefits was appropriate and will not be altered."

69. Defendants therefore paid no further benefits beyond February 15, 2007.

70. Defendants' August 10, 2007 letter also provided that Plaintiff was capable of working in four job positions, each of which paid within $100,000 to $150,000.

71. Defendants' August 10, 2007 letter further provided that they had calculated 60% of his annual indexed earnings to be $155,000.00.

72. Plaintiff requested, via letters by undersigned counsel dated September 28, 2007, any and all "relevant" documents as is defined within 29 C.F.R. § 2560.503-1, including but not limited to any and all documents pertaining to or referencing Plaintiff's employee welfare benefit plan(s) and/or employee pension plans.

73. Sun Life Financial and Sun Life Assurance Company of Canada sent, under cover of letter dated December 14, 2007, what they purported to be "a copy of [Plaintiff's] entire claim file." Despite the date on Defendants' letter, the FedEx shipping label reflects that the package was actually sent December 18, 2007.

## VI. CAUSE OF ACTION
## COUNT 1

### (A) ACTION FOR BENEFITS UNDER 29 U.S.C. § 1132(a)

74. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

75. The respective Plans are deemed "employee welfare benefit plans" and/or "employee pension plans" as those terms are defined in 29 U.S.C. § 1001, et. seq.

76. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plans as those terms are defined under 29 U.S.C. § 1001, et. seq.

77. Plaintiff is disabled under the terms of the employee welfare benefit plans.

78. Plaintiff is disabled under the terms of the employee pension plans.

79. The decision to deny benefits was not supported by substantial evidence.

80. The Defendants denied Plaintiff benefits to which Plaintiff was entitled under the terms of the employee welfare benefit plans/insurance policy(ies) and/or pension plans by refusing to provide or discontinuing payment of benefits.

81. The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor regulations.

82. The decision making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

83. The appellate procedures did not provide the Plaintiff a full and fair review.

84. The Defendant's actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plans/insurance policies.

85. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for the Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff

has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan(s), in an amount equal to future benefits payable while the Plaintiff remains disabled under the terms of the Plan(s), and additional damages to be proven in the trial of this matter.

## COUNT II

### CAUSE OF ACTION FOR FAILURE TO PROVIDE PLAN DOCUMENTS UNDER 29 U.S.C. § 1132(c)

86. Plaintiff adopts and incorporates all of the Paragraphs above as though fully set forth herein.

87. The Defendant Plan Administrator and / or the *de facto* Plan Administrator was requested to provide all relevant documents as well as any documents which form the basis of the Defendants' denial of benefits to the Plaintiff.

88. 29 C.F.R. 2560.503-1 (h) (2) (iii) provides that the Plaintiff is to be provided copies of "all documents, records and other information relevant to claimant's claim for benefits."

89. 29 C.F.R. 2560.503-1 (m) (8) defines "relevant" as it is used in 29 C.F.R. 2560.503-1 (h) (2) (iii), as all documents, records or other information which was "relied upon in the making of the benefit determination" or "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such documents, record or other information was relied upon in making the benefit determination", and "demonstrates compliance with the administrative process and safeguards required."

90. The Defendant Plan Administrator and / or the *de facto* Plan Administrator, failed ore refused to provide the documents as required pursuant to 29 U.S.C. § 1132 (c) and 29 C.F.R.

14

2560.503-1 (h) (2) (iii).

91. As an ERISA fiduciary the Defendant Plan Administrator and / or the *de facto* Plan Administrator was responsible for providing timely, accurate and complete information and documents to Plaintiff.

92. Pursuant to 29 U.S.C. § 1132(c), the Defendant Plan Administrator and / or the *de facto* Plan Administrator is liable to Plaintiff for penalties in an amount up to One Hundred Ten Dollars ($110) per day from thirty days after the first request for the claims file and supporting documentation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the Plaintiff the following relief:

a. Award the Plaintiff past benefits due and payable under the terms of the employee welfare benefit plans/insurance policy(ies) and/or pension plans pursuant to 29 U.S.C. § 1132(a)(1);

b. Award the Plaintiff benefits due under the terms of any ancillary plans that may provide benefits to Plaintiff;

c. For a declaratory judgment as to the Plaintiff's entitlement to future benefits and an appropriate order directing the Defendant to pay all similar claims of the Plaintiff in the future pursuant to 29 U.S.C. § 1132 (a)(1);

d. Should the Defendants pay all past due benefits, Plaintiff requests this Honorable Court enter a declaratory judgment as to the Plaintiff's entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to the Plaintiff

in the future, or in the alternative, for the Court to remove the Defendant's from their fiduciary roles in the administration of the Plan(s), and to appoint a special master to substitute for those Defendant's, with the special master having the authority to make all determinations as to the Plaintiff's entitlement to future benefits;

e. For a judgment against the Defendant awarding the Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132 (g)(1);

f. For an order enjoining the Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of the Plaintiff's claim;

g. For an order finding the Defendants jointly and severally liable for the breaches described herein;

h. For an ordering finding the Defendants jointly and severally liable for any award of damages;

i. For an order requiring Defendants to provide the Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s);

j. For a judgment against the Plan Administrator and or *de facto* Plan Administrator in an amount representing up to $110 per day from the date of the original request for documentation until such time as the documents are provided to Plaintiff as required under 29 C.F.R. 2560.503-1(g)(1), and pursuant to 29 U.S.C. § 1132(c)(1);

k. Such other relief as may be deemed just and proper.

_____
Thomas O. Sinclair (SIN018)


_____
Jenifer Champ Wallis (WAL191)

**OF COUNSEL:**

CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205) 803-0051
Fax:    (205) 803-0053
E-mail: tsinclair@cgl-law.com
E-mail: jwallis@cgl-law.com

17

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

**Sun Life Assurance Company of Canada**
The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL  36109

**The Seydel Companies Employee Benefit Plan**
244 John B. Brooks Road
P.O. Box 169
Pendergrass, CA  30567

**Sun Life Financial, Inc.**
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

**MCMC, llc**
Registered Agent Solutions, Inc.
32 W. Loockerman St., Suite 201
Dover, DE  19904

**Peer Review Analysis, Inc.**
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

_/s/ Jenifer Champ Wallis_
Of Counsel

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602003624
Cashier ID: brobinso
Transaction Date: 01/30/2008
Payer Name: CAMPBELL GIDIERE LEE
------------------------------------
CIVIL FILING FEE
  For: CAMPBELL GIDIERE LEE
  Case/Party: D-ALM-2-08-CV-000070-001
  Amount:         $350.00
------------------------------------
CHECK
  Check/Money Order Num: 11776
  Amt Tendered:   $350.00
------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00

HERBERT JACK GOLDEN V. SUN LIFE
FINANCIAL ET AL
```