# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| HERBERT JACK GOLDEN; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No.:  2:08-cv-70-WKW |
| | ) |
| SUN LIFE FINANCIAL, INC.; | ) |
| SUN LIFE ASSURANCE COMPANY OF | ) |
| CANADA; MCMC, LLC; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT MCMC, LLC'S MOTION FOR SUMMARY JUDGMENT**

Comes now, Herbert Jack Golden ("Plaintiff"), and files his Response in Opposition to MCMC, LLC's ("MCMC") Motion for Summary Judgment.  MCMC contends that despite the fact that it hired the physician whose report provided basis for the Sun Life Defendants' denial of Plaintiff's claim Long Term Disability ("LTD") benefits, provided the Sun Life Defendants with this Report and received a monetary benefit for providing the same, it is not a proper Defendant in this ERISA litigation.  To the extent that MCMC claims it should not be a Defendant in this action, its actions as evidenced in Exhibit E prove that it is properly included in this action as an ERISA fiduciary.  To the extent that MCMC claims Plaintiff has not provided sufficient evidence of MCMC's role as an ERISA fiduciary, its Motion for Summary Judgment should be denied because MCMC has wholly refused to participate in any discovery[1].  In the alternative,

---

[1] MCMC's Motion for Summary Judgment should also be denied for those reasons set forth in Plaintiff's Response to This Honorable Court's Order and Statement of Why Discovery is Necessary and Critical (Doc. No. 29) and Response to This Honorable Court's Order and

Plaintiff respectfully requests this Honorable Court postpone ruling on MCMC's Motion for Summary Judgment until the parties have had the opportunity to complete discovery.

MCMC should not be rewarded by an entry of summary judgment in its favor where it has not participated in <u>any</u> discovery, failing to even produce Rule 26 Initial Disclosures[2]. This Response is supported by Undersigned Counsel's Affidavit (Exhibit A), Plaintiff's narrowly tailored discovery requests (Exhibit B), correspondence between undersigned counsel and MCMC's counsel (Exhibits C & D) and documents evidencing MCMC's role in Plaintiff's claim for benefits (Exhibit E).

**I.    MCMC Exercised Sufficient Discretionary Authority and Control To Be Deemed an ERISA Fiduciary.**

Because MCMC provided services and information used to deny Plaintiff's claim for LTD benefits it is an ERISA fiduciary and its Motion for Summary Judgment should be denied. *See* Exhibit E[2]. ERISA provides that a "fiduciary" is anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of [the plan's] assets, [or] has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A). Moreover, "the term 'fiduciary' is to be liberally construed" due to the "remedial purposes of ERISA." *Eslava v. Gulf Telephone Co., Inc.*, 418 F. Supp. 2d 1314, 1321 (S.D. Ala. 2006).

MCMC qualifies as an ERISA fiduciary because it prepared a Case Report directly addressing Plaintiff's ability to work and provided alleged restrictions and limitations

---

Statement of Whether this Case May be Decided on the Pleadings, Briefs and Exhibits (Doc. No. 31), which Plaintiff hereby adopts and incorporates by reference as though fully set forth herein
[2] *See* Exhibit C.

specifically for the purpose of determining benefits pursuant to Plaintiff's claim for LTD benefits. *See* Exhibit E[3]. MCMC's analysis regarding Plaintiff's ability to work and his alleged restrictions and limitations is cited as support in the termination of Plaintiff's LTD benefits. *Id*.

MCMC's clear role in the termination of Plaintiff's LTD benefits renders it an ERISA fiduciary pursuant to 29 U.S.C. § 1002(21)(A), as quoted above. MCMC's assertion that it did not have any discretionary authority or responsibility in the administration of the Plan is clearly erroneous and its Motion for Summary Judgment should therefore be denied. To the extent that MCMC argues that there is inadequate evidence that it is an ERISA fiduciary, MCMC's Motion for Summary Judgment should be denied due to its failure to participate in discovery.

## II.   Summary Judgment is Inappropriate Where MCMC Has Not Participated in Discovery.

Summary judgment is inappropriate here, where MCMC has not participated in any discovery. *See Jones v. City of Columbus, Ga.*, 120 F.3d 328, 253 (11th Cir. 1997) ("The law in [the Eleventh] Circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."). MCMC has not yet answered Plaintiff's discovery requests and has failed even to produce Initial Disclosures. Despite Plaintiff's timely discovery requests and the mandate of Fed. R. Civ. P. 26, MCMC has not participated in discovery.

> The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits .... If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials .... Generally summary judgment is

---

[3] The documents included as Exhibit E were provided not by MCMC but by the Sun Life Defendants pursuant to Plaintiff's pre-litigation ERISA request.

inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests.

*Jones*, 120 F.3d at 253 (quoting *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870-71 (11th Cir. 1988)).  MCMC's failure to participate in any discovery renders its Motion for Summary Judgment wholly inappropriate and it should be denied on this ground alone.  In the alternative, this Honorable Court should postpone ruling on MCMC's Motion for Summary Judgment until MCMC has fully responded to Plaintiff's narrowly tailored discovery requests and provided their Initial Disclosures.

**III.    To the Extent MCMC Claims Insufficiency of Evidence to Prove it is an ERISA Fiduciary, MCMC's Motion for Summary Judgment Should Be Denied**

Whether MCMC is subject to ERISA fiduciary responsibilities as an ERISA fiduciary or party in interest is a factual determination based on the extent of MCMC's involvement in the plan.  *See Eslava v. Gulf Telephone Co., Inc.*, 418 F. Supp. 2d 1314, 1322-1323 (S.D. Ala. 2006) (Holding that the question of whether a defendant was an ERISA fiduciary is a fact-intensive inquiry and therefore summary judgment could not be granted where no discovery had been conducted).  *See also* 29 U.S.C. § 1002(21)(A) (providing that a "fiduciary" is anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of [the plan's] assets, [or] has any discretionary authority or discretionary responsibility in the administration of [the] plan.").

To the extent that MCMC argues that Plaintiff has presented insufficient evidence that it is an ERISA fiduciary and this Honorable Court is not satisfied of MCMC's role as ERISA fiduciary based on the evidence submitted thus far, Plaintiff respectfully requests this Honorable Court postpone ruling on MCMC's Motion for Summary Judgment until the completion of

discovery. Plaintiff has propounded certain narrowly tailored discovery requests that, should this Honorable Court be dissatisfied with the evidence submitted thus far of MCMC's role as an ERISA fiduciary, will further shed light on this issue of material fact. *See* Exhibits A and B. As the U.S. District Court for the Southern District of Alabama made clear in *Eslava*, 418 F. Supp. 2d at 1322-1323, summary judgment is not appropriate where the fact-intensive inquiry necessary to determine whether a defendant is an ERISA fiduciary cannot be completed due to a lack of discovery. Such a summary judgment would be even more inequitable here where Plaintiff has attempted to obtain the information bearing on this issue amicably, prior to formal discovery and prior even to MCMC's appearance in this action but MCMC has refused. *See* Exhibit D.

## CONCLUSION

For the reasons set forth herein, as well as those reasons in Plaintiff's previous filings (Docs. No. 29 & 31), Plaintiff respectfully requests this Honorable Court deny MCMC's Motion for Summary Judgment or, in the alternative, postpone ruling on that Motion until MCMC produces its Initial Disclosures and fully and completely responds to Plaintiff's limited and narrow discovery requests which are attached hereto as Exhibit B.

Respectfully submitted,


/s/ Jenifer Champ Wallis
Jenifer Champ Wallis
One of the Attorneys for Plaintiff

OF COUNSEL:
Thomas O. Sinclair (SIN018)
Jenifer Champ Wallis (WAL191)
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205).803-0051
Fax:  (205).803-0053

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of May, 2008, a copy of the foregoing was served on all counsel of record via the Federal Court CM/ECF system as follows:

David B. Hall
Julie C. Metheny
BAKER DONELSON
420 North 20th Street, Suite 1600
Birmingham, Alabama  35203

Christopher Morris
BAKER DONELSON
One American Place
301 North Main Street, Suite 810
Baton Rouge, Louisiana  70825

Steven F. Casey
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 2700
Birmingham, Alabama  35203

/s/ Jenifer Champ Wallis
Of Counsel

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| HERBERT JACK GOLDEN; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No.: 2:08-cv-70-WKW |
| | ) |
| SUN LIFE FINANCIAL, INC.; | ) |
| SUN LIFE ASSURANCE COMPANY OF | ) |
| CANADA; MCMC, LLC; | ) |
| | ) |
| Defendants. | ) |

### RULE 56(f) AFFIDAVIT OF JENIFER CHAMP WALLIS

Before me, the undersigned Notary Public in and for Alabama and in Jefferson County, personally appeared JENIFER CHAMP WALLIS, who being known to me, upon oath duly administered, deposed and said as follows:

1. My name is Jenifer Champ Wallis. I am over the age of nineteen and have personal knowledge of the facts set forth in this affidavit. I am an attorney with Campbell, Gidiere, Lee, Sinclair & Williams, LLC, and I am one of the attorneys for Plaintiff Herbert Jack Golden.

2. The above-captioned action was filed on January 30, 2008. Defendant's first filing in this case was its Motion for Summary Judgment, filed on March 25, 2008.

3. To this date, MCMC has produced no discovery in response to Plaintiff's propounded discovery requests in this case and has not provided Initial Disclosures.

4. MCMC's failure to participate in discovery has deprived Plaintiff of an opportunity to obtain information detailing the degree of MCMC's involvement in Plaintiff's claim and

the extent of MCMC's role as a fiduciary of the Plan at issue. Thus, the Defendant MCMC seeks to deprive Plaintiff of critical factual discovery necessary to rebut MCMC's factual allegation in their Motion for Summary Judgment.

5. The necessary discovery is included as Exhibit B to Plaintiff's Rule 56(f) Response and includes, but is not limited to, the Services Agreement governing MCMC's role in Plaintiff's claim as well as documents evidencing MCMC's role in the benefits denial at issue in this case.

6. Discovery bearing on genuine issues of material fact put at issue by MCMC's Motion for Summary Judgment include but are not limited to:

   a. Whether MCMC chose or participated in the selection of those physicians who reviewed Plaintiff's medical records or claim for benefits.

   b. The criteria MCMC utilized in selecting those physicians who reviewed Plaintiff's medical records or claim for benefits.

   c. Whether MCMC determined what medical records the physicians who reviewed Plaintiff's medical records or claim for benefits could review.

   d. Whether MCMC instructed the physicians who reviewed Plaintiff's medical records or claim for benefits to disregard certain medical records.

   e. Whether MCMC instructed the physicians who reviewed Plaintiff's medical records or claim for benefits to give heightened consideration to certain medical records.

   f. Whether MCMC instructed the physicians who reviewed Plaintiff's medical records or claim for benefits to make a determination of a lack of disability.

   g. Whether MCMC controlled the communication between the physicians who reviewed Plaintiff's medical records or claim for benefits and the Sun Life Defendants.

2

h.  Whether MCMC was paid with Plan funds for its involvement in Plaintiff's claim.

i.  Whether MCMC directed its physicians to make findings that would support a denial of Plaintiff's claim for benefits.

j.  Whether the Services Agreement governing MCMC's role in Plaintiff's claim assigns MCMC with discretionary authority regarding the Plan.

7.  I expect that the above listed discovery will disclose crucial evidence of whether MCMC is an ERISA fiduciary.


Further affiant saith not.

Executed this 7th day of May, 2008.

Jenifer Champ Wallis

Sworn to and subscribed before me this the 7th day of May, 2008.

Notary Public
My Commission Expires 04-05-09

3

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HERBERT JACK GOLDEN;            )
                               )
      Plaintiff,               )
                               )
v.                             )        Civil Action No.:  2:08-cv-70-WKW
                               )
SUN LIFE FINANCIAL, INC.;      )
SUN LIFE ASSURANCE COMPANY OF  )
CANADA; MCMC, LLC;             )
                               )
      Defendants.              )

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT MCMC, LLC

COMES NOW the Plaintiff, Herbert Jack Golden, and requests that the Defendant MCMC, LLC (hereinafter referred to as "MCMC", "You", "Your", or "Yours") answer the following Interrogatories and Requests for Production, separately, severally, fully, in writing and under oath within thirty (30) days from the date of service hereof.

### INSTRUCTIONS

A.      **Use of Rule 33 in Responses**

If responding to a request for production by reference to documents produced, specifically identify those portions of specific documents identified by Bates number that you contend respond to each individual request for production.

B.      **Use of "General Objections"**

If offering in prefatory statements or referencing in specific responses "General Objections" in response to a request for production, cite specifically to each general objection applicable to the individual request for production.

C.    Objections based on "Attorney / Client" privilege or the "Work Product" doctrine

If objecting to a request for production on the basis of attorney / client or work product privilege (either through reference to General Objections or within the response to the individual request), produce a Privilege Log as required by the applicable Rules of Civil Procedure.

D.    Definitions

1.  "You", "Your" and "Yours" refers to MCMC, llc, and its agents, consultants, employees, subsidiaries, or predecessors or successors in interest, including but not limited to MCMC, llc's subsidiary and/or division known as "Peer Review Analysis".

## INTERROGATORIES

1. Please state, fully and with great particularity, Your role, responsibilities, and actions of any kind with regard to Plaintiff's claim for benefits and/or any reviews of Plaintiff or Plaintiff's records by any doctor.

2. Please state, fully and with great particularity, what services You provide, or have provided, to any Defendant.

3. Please state whether You provided any documents or correspondence whatsoever to any medical professional who reviewed Plaintiff's claim for benefits and/or Plaintiff's medical records.  If your answer is yes, please state, fully and with great particularity how you determined what documents to provide to those medical professionals.

4. Please state, fully and with great particularity, what documents or correspondence were provided to any medical professional who reviewed Plaintiff's claim for benefits and/or Plaintiff's medical records.

5. Please state whether any Defendant had any input, or offered any input, regarding what documents were provided to any medical professional related to any review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

6. If your answer to Interrogatory number 5 is yes, please state, fully and with great particularity, what input was given, the manner in which it was communicated, and provide any and all documentation related to the same.

7. Please state whether any Defendant has ever requested that You or any medical professional make a determination of "disability" (in accordance with the AMA Guidelines) related to the Plaintiff.

8. Please identify and produce any and all documents, policies and/or guidelines provided to the medical professionals who reviewed Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

9. Please state whether You or, to Your knowledge, any Defendant expressly informed any medical professional to disregard and/or destroy any documents referring or relating to Plaintiff.

10. If your answer to Interrogatory number 9 is yes, please state, fully and with great particularity, what instructions were given, the manner in which they were communicated, and provide any and all related documentation.

11. Please state whether any medical professional contacted by You considered all medical documents provided by Plaintiff or by Plaintiff's attending physicians in any examination, evaluation, or review of the Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

12. Please identify what medical documents were considered in any medical professional's examination, evaluation, or review, state who provided each medical document, and provide a copy of the same.

13. Please state whether You have ever been provided with a copy of the Policy at issue in this case, or with the definition of "disability" provided by the Policy at issue in this case. If your

3

answer is yes, please state what entity(ies) and/or individual(s) provided said information and/or documentation to you and provide a copy of the same.

14. Please state whether You have ever been provided with a copy of Plaintiff's job description. If your answer is yes, please state what entity(ies) and/or individual(s) provided said information and/or documentation to you and provide a copy of the same.

15. Please state the manner in which any and all medical professional(s), including but not limited to physician(s), who performed any examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits were selected to perform the same.

16. Please identify any documents generated and/or utilized in the selection of any and all medical professional(s), including but not limited to physician(s), or related to such selection in any way, who performed any examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits and provide a copy of the same.

17. Please state what "Peer Review Analysis" is, MCMC, llc's relationship to the same and produce any contracts, service agreements or agreements of any kind, evidencing the same.

## REQUEST FOR PRODUCTION

1. Produce any and identify by Bates number all agreements or service agreements between you and any other Defendant, including but not limited to, those service agreements governing and/or related to any services You provided related in any way to Plaintiff.

2. Produce and identify by Bates number any and all documents within your possession, custody or control that reference or pertain to the Plaintiff, including but not limited to communications between You and any other Defendant relating to Plaintiff.

4

3.    Produce and identify by Bates number any and all documents that describe your responsibilities and compensation governing the terms of your services to any Defendant or to individuals referred to you by any Defendant as it relates to the services you provided, or arranged to be provided, to Plaintiff or any Defendant.

4.    Produce any and all correspondence between You and Dr. George Phillipides relating in any way to Plaintiff or Plaintiff's claim for benefits, including any documents (including but not limited to any medical records, letters from third parties or referral forms) You sent to Dr. Phillipides.

5.    Produce any and all correspondence between You and Dr. Ross Davis relating in any way to Plaintiff or Plaintiff's claim for benefits, including any documents (including but not limited to any medical records, letters from third parties or referral forms) You sent to Dr. Davis.

6.    Produce any and all documents (including but not limited to any internal memoranda, reports, correspondence or guidelines/instructions of any kind from any Defendant) related to Your selection and/or hiring or referral of any medical professional to provide any services related to Plaintiff or his claim for benefits.

7.    Produce and identify by Bates number every report, including any medical reports (to include any generic medical reports not specifically pertaining to the Plaintiff but used in referencing the restrictions and limitations pertaining to the Plaintiff's disability) considered or available for consideration in the process of examining and/or evaluating or reviewing the Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits. This response should include any internal memorandum regarding the Plaintiff, to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

8.     Produce and identify by Bates number any other reports, correspondence or opinions You received or discovered in any manner referring or relating to the examination, evaluation, or review of the Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

9.     Produce and identify by Bates number each rule, guideline, criteria, law, regulation, or other document considered by You, or any medical professional on Your behalf or on behalf of any Defendant, in any way in the examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

10.     Produce any and all internal memorandum, correspondence, email or guidelines detailing the manner in which the Plaintiff , Plaintiff's medical records or Plaintiff's claim for benefits was to be reviewed, examined and/or evaluated, including any and all documents of your subsidiaries, or predecessors in interest, detailing the steps to be undertaken and/or documents to be reviewed or disregarded  in the examination, evaluation or review of the Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

11.     Produce all electronically stored information referencing or pertaining to the Plaintiff.

12.     Produce curriculum vitae for any medical personnel, to include nurses, doctors, surgeons, whether RNs, LPNs, or MD's, or Ph.D.'s who examined, evaluated, or reviewed Plaintiff, Plaintiff's claim for benefits or medical records or any other materials related to the Plaintiff.

13.     Produce any and all documentation, to include checks, authorizations for payment, or any other documentation detailing the amount paid or that may be paid by (or to) You or any Defendant for any medical professional's examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

14.     Produce all "administrative messages", emails, or any other form of internal communication, reflecting or relating to any communications referencing or pertaining to the

Plaintiff and/or any examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

15.     Produce all documents referencing or regarding the Plaintiff prepared by or provided to You or any Defendant by any medical professional, including but not limited to any physician, who examined, evaluated, or reviewed Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

16.     Produce all documents created by or provided by You, Your consultants, employees, subsidiaries, or predecessors or successors in interest, regarding the assessment of the Plaintiff's medical condition and how that condition may affect the Plaintiff's ability to work.

17.     Produce all documentation prepared by You or on Your behalf or provided to You or any medical professional that reflects, refers, or establishes those duties of the Plaintiff's occupation before the Plaintiff filed a claim.

18.     Produce any statement, telephone recording or tape conversation of Plaintiff's conversations or communications with You, Your employees, agents, or representatives.

19.     Produce any tapes, photographs or recordings in unedited format, by whatever media, including any surveillance tapes, of the Plaintiff.

20.     Produce each and every document provided to You or any medical professional related to, or to be utilized, in the examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

21.     Produce and identify by Bates number every medical report referencing or referring to the Plaintiff.  This response should include any internal memorandums regarding the Plaintiff's claims, to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff.

22.    Produce and identify by Bates number any document identified in response to any of the preceding Interrogatories.

23.    Produce any and all correspondence, including but not limited to any correspondence in electronic medium or otherwise, related to the selection of any medical profession who performed any examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

24.    Produce any and all criteria and/or guidelines of any kind provided by any Defendant related to the selection of any medical professional who performed any examination, evaluation, or review of Plaintiff, Plaintiff's medical records or Plaintiff's claim for benefits.

25.    In responding to these requests for production, if you have, by way of reference to a general objection or by offering a specific objection to any individual request, claimed a right to protection from discovery of certain documents by operation of the attorney-client privilege, the work product doctrine, or any other privilege afforded under law, please state the following with respect to each such document for which said privilege is asserted:

    (a)    The date of the document;

    (b)    The author(s) of the document;

    (c)    Each addressee or recipient of the document including carbon copy and blind copyholders;

    (d)    The factual basis for your privilege claimed;

    (e)    The specific privilege claimed; and

    (f)    The location of the document.

_____

Jenifer Champ Wallis
Attorney for Plaintiff


Thomas O. Sinclair
Jenifer Champ Wallis
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
Ph:    (205) 803-0051
Fax:   (205) 803-0053
E-mail:  jwallis@cgl-law.com
E-mail:  tsinclair@cgl-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2008, I deposited the above and foregoing in the United States Mail, with correct postage and properly addressed to the following:

David B. Hall
Julie C. Metheny
BAKER DONELSON
420 North 20th Street, Suite 1600
Birmingham, AL 35203

Christopher Morris
BAKER DONELSON
One American Place
301 North Main Street, Suite 810
Baton Rouge, LA 70825

Steven F. Casey
BALCH & BINGHAM, LLP
1901 Sixth Avenue North, Suite 2700
Birmingham, AL 35203

OF COUNSEL

10

# EXHIBIT C



Campbell, Gidiere, Lee
Sinclair & Williams
ATTORNEYS AT LAW

**Jenifer Champ Wallis**
jwallis@cgl-law.com

May 7, 2008

**VIA FACSIMILE**
**FAX # 205-226-8798**
Mr. Steven Casey, Esq.
BALCH & BINGHAM
1710 6th Avenue North
Birmingham, AL  35203

> Re:    *Jack Golden v. Sun Life Insurance Company, et al*
>        **United States District Court of Alabama, Middle District**
>        **Civil Action No.:  2:08-cv-70-WKW**

Dear Mr. Casey:

Please allow this letter to serve as reasonable notice pursuant to Rule 37 that MCMC has failed to produce Initial Disclosures pursuant to Fed. R. Civ. P. 26(a).  Your client has also not yet responded to the Interrogatories and Requests for Production propounded by Plaintiff.  We are, obviously, unable to present the essential facts necessary to oppose MCMC's Motion for Summary Judgment without any Initial Disclosures or responses to our discovery requests.

Please therefore provide MCMC's Initial Disclosures as is required by Fed. R. Civ. P. 26.

Sincerely,

Jenifer Champ Wallis

JCW/kdg
cc:    Tom Sinclair

# EXHIBIT D



**Campbell, Gidiere, Lee
Sinclair & Williams**
ATTORNEYS AT LAW

**JENIFER CHAMP WALLIS**
jwallis@cgl-law.com

March 25, 2008

**VIA FACSIMILE ONLY**
Mr. James T. Finnigan, Esq.
Rich May, A Professional Corporation
176 Federal Street
Boston, MA 02110-2223

   Re: *Jack Golden v. Sun Life Insurance Company*
     **M.D. Ala. Civil Action No. 2:08-CV-70**

Dear Mr. Finnigan:

  I understand, per your correspondence with Tom Sinclair, that you represent both MCMC and Peer Review Analysis in the above-referenced litigation. I further understand that we agreed to refrain from moving for a default judgment against your clients before March 21 based upon your representation that you would produce a copy of the service agreement between MCMC and Sun Life and that you would be filing an Answer on or before March 21, 2008. You now assert that you will not produce said service agreement and you have, to date, not filed an Answer.

  Our agreement to refrain from moving for a default judgment against your clients before March 21 was a professional courtesy to you. Despite the tone of your March 24, 2008 correspondence, we will continue to treat you with such professional courtesy, as is this firm's practice. While extending you the courtesy of refraining from seeking default judgment, we have scheduled a Rule 26 Parties' Planning Meeting for this Friday at 1:00 p.m. CST and look forward to your participation in the same.

  In your clients' absence, all counsel of record have been working to reach an agreement to dismiss without prejudice The Seydel Companies Employee Benefit Plan. I am including a copy of correspondence that I sent to all counsel of record on March 17, 2008, which sets forth my proposed agreement. I have since received written confirmation from the Sun Life Defendants that they have accepted my proposed agreement. I extend the same proposal for the dismissal without prejudice of The Seydel Companies Employee Benefit Plan, set forth in my March 17 letter, to your clients.

  I hope this correspondence has served to adequately inform you of the status of the above-reference litigation in the absence of your clients. You may participate in the Rule 26 teleconference meeting by calling into 1-866-212-0875, conference # 1230274.

I look forward to hearing from you and receiving your clients Answer.

Sincerely,

Jenifer Champ Wallis

JCW/kdg

cc:    Tom Sinclair



**THOMAS O. SINCLAIR**

March 21, 2008

**VIA FACSIMILE ONLY**
James T. Finnigan
Rich May, a Professional Corporation
176 Federal Street
Boston, MA 02110-2223

Re:    *Jack Golden v. Sun Life Insurance Company*

Dear Mr. Finnigan:

It was a pleasure speaking with you yesterday. As I understand it your clients are now withdrawing their offer to produce the agreement between themselves and the other defendants in this matter based upon those other defendant's attorney's objections. We had previously extended the courtesy of a couple of extensions of time so that your client could produce that document in hopes that would resolve their involvement in this matter. In light of this reversal we look forward to receiving your client's response to this Complaint by today.

Sincerely,

Thomas O. Sinclair

TOS/kh

# EXHIBIT E

Date: 02/07/03  Time: 12:14 PM  To: MARIE KING @ 1781-235-0784                    Page: 001-005

# Peer Review Analysis®

**MCMC llc**

**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**                                          **facsimile transmission**

---

*To:* MARIE KING

*Company:* SUN LIFE FINANCIAL

*Office:* WELLESLEY HILLS

*Fax Number:* 1781-235-0784                          *Pages:* 5

*From:* PRA Customer Service Team                  *Date:* February 07, 2003

*Subject:* HERBERT GOLDEN                            *Time:* 12:14:50 PM

*Case #:* 10544769

*Note:*

*For questions, call For questions, call CAROLE CROWLEY, Team 3, Ext 7639*

RECEIVED

FEB 0 7 2003

LONG TERM DISABILITY

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal service. You will be reimbursed for your postage expense. Thank you.

# Peer Review Analysis®

Case Report for
## SUN LIFE FINANCIAL

| | | | |
|---|---|---|---|
| **To:** | MARIE KING | **Case Number:** | 10544769 |
| **Company:** | WELLESLEY HILLS | **Office:** | WELLESLEY HILLS |
| **Review Type:** | DIS-MED SU | **Referred:** | 01/31/2003 |
| **Service:** | APPEAL | **Admit Date:** | / / |
| **Sub Service:** | STANDARD | **Discharged:** | / / |
| **Patient:** | GOLDEN, HERBERT | **Patient SSN:** | 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 |
| **Policy:** | 61976 | **Employee SSN:** | 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 |

**REASON FOR REFERRAL:**
Mr. Golden's long-term disability claim was reviewed by Dr. George Phillipides on November 24, 2001, October 16, 2002, and December 6, 2002, Dr. Phillipides' reviews were sent to Mr. Golden's cardiologist, Dr. Ross Davis, for comment and his response appears to disagree with Dr. Phillipides's conclusions.

1. We are seeking clarification regarding the claimant's current medical condition, how it is classified, and his ability to work. particularly, is the claimant capable of work that requires flying?

2. In addition, what are the claimant's restrictions and limitations and what is his prognosis?

**REVIEW DATA:**
Sun Life Financial Referral form, submitted medical records, letter from Dr. Roth Davis dated 01/13/2003 and reviews from Dr. George Phillipides.

**RECOMMENDATION:**
1. The claimant's current medical condition should be classified as follows; Hypertensive Cardiovascular Disease Left ventricular hypertrophy, Left ventricular systolic dysfunction Congestive Heart Failure New York Heart Assoc. Clinical Class I-II, Atherosclerotic Cardiovascular Disease, Coronary Artery Disease, Stable Angina New York Heart Assoc. Clinical Class I. The claimant is not able to resume his high pressure, stressful occupation as President of Sydel International. The claimant should be capable of working at a sedentary job or a job that requires light exertion. The claimant is capable of flying on commercial airlines however frequent travel by air, especially long flights would need to be avoided. Travel would need to be restricted to destinations that had modern medical facilities readily available.

2. The claimant's restrictions are that he needs to avoid strenuous physical exertion and high levels of emotional stress both situations that can exacerbate the

MCMC IIc

**Peer Review Analysis®**
Case #: 10544769                                           Page 2 of 4

patient's symptoms of congestive heart failure. The claimant needs to avoid
temperature extremes, high altitudes and climbing stairs or ladders. Although the
claimant can fly on a commercial airline the claimant would not be able to carry
heavy luggage, would need enough time between connections so that he did not
need to rush to a connection, might require special meals with salt and cholesterol
restriction, and he would need to avoid long flights especially in situations that
had limited space that would interfere with him being mobile during the flight to
avoid the risk of deep venous thrombosis and the possibility of pulmonary
embolus. The claimant's prognosis is hard to predict as he can remain clinically
stable on medical therapy for many years however the patient's left ventricular
dysfunction may get progressively worse or the claimant's coronary artery disease
could become more severe (especially if the claimant does not stop smoking)
altering the claimant's prognosis for the worse.

RATIONALE:
The claimant was found to have a hypertrophied and mildly enlarged left ventricle when
he was evaluated for symptoms of progressive exertional dyspnea in the summer of
2001. The claimant was noted to have significant hypertension. Further study
revealed significant single vessel coronary artery disease, however the claimant's left
ventricular dysfunction was felt to be out of proportion to the coronary artery disease.
Since the patient had predominantly left ventricular hypertrophy without significant left
ventricular dilatation and since the patient was found to have uncontrolled hypertension
the most likely explanation for the patient's left ventricular hypertrophy and the left
ventricular dysfunction is Hypertensive Cardiovascular Disease. The presence of
coronary artery disease on coronary angiography would also classify the claimant as
having Atherosclerotic Cardiovascular Disease. Thus the claimant has two separate
cardiac diagnoses each contributing to the claimant's current clinical condition.

Initially the claimant had significant limitation in his physical ability due to dyspnea
however with proper diet, exercise and appropriate medical therapy the claimant seems
to have improved significantly. The claimant had an exercise stress test in 09/2002
that demonstrated a ten minute exercise tolerance and he achieved 92 percent of his
predicted maximum heart rate. This objective measure of the claimant's exercise ability
is sufficient to classify the claimant's current Clinical Class with respect to the
Hypertensive Cardiovascular Disease and Left Ventricular Dysfunction as Class I to at
most Class II. The claimant is not limited by symptoms of angina pectoris and thus the
Clinical Class with respect to his Atherosclerotic Cardiovascular Disease, Coronary
Artery Disease is Clinical Class I. Dr. Davis questions the use of the well established
New York Heart Association (NYHA) classification of heart disease and the clinical
classification used by the NYHA. Dr. Davis claims that this is an older classification
scheme that is no longer appropriate. I am not aware of a classification that is more
widely accepted than the NYHA classification and with it the designation of clinical
class that relates a persons symptoms with the degree of physical exertion needed to
produce these symptoms. All of the classifications used to identify patients in need of
cardiac transplant rely on the clinical classification system described in the NYHA
Classification. Dr. Davis questions the claimant's current clinical classification as Class

**Peer Review Analysis®**
Case #:  10544769                                                Page 3 of 4

I, as stated by Dr. Phillipides, stating that his observation of the claimant would classify the claimant as Class II to III. Class III symptoms are defined as symptoms that occur with less than normal daily routine activity. At the time of diagnosis in 2001 the claimant may have been Class III however based on the claimant's current evaluation and his exercise duration of ten minutes on a exercise stress test in 09/2002 the claimant can no longer be classified as Clinical Class III and is probably best classified as Clinical Class I, maybe barely Class II.

Although the claimant has made significant improvement in his clinical condition with diet, exercise and appropriate medical therapy the patient continues to have evidence for depressed left ventricular function on echocardiograms and on nuclear studies of his ventricular function. In order for the claimant to continue to improve he needs to continue his current regimen and he needs to discontinue his cigarette smoking. With evidence for continued left ventricular dysfunction the claimant cannot return to his previous level of vigorous activity and travel required on his job as President of Sydel International. The claimant's current physical ability, as objectively observed on the stress test of 09/2002, would allow the claimant to do at least sedentary work and probably light work. The claimant would have restrictions on the work environment and ability to travel by commercial air as outlined above.

CLINICAL SUMMARY:
The patient is a 55 year old male with a history of a hypertensive cardiovascular disease with left ventricular hypertrophy and left ventricular systolic dysfunction as well as coronary artery disease. The claimant initially was diagnosed in 2001 after complaining of progressive exertional dyspnea. The claimant has been treated with appropriate medical therapy as well as diet and exercise. The claimant has had significant improvement in his ability to do physical activity and a recent stress test demonstrated ten minute exercise duration. The claimant continues to smoke in spite of numerous recommendations to discontinue his cigarette smoking and his echocardiograms continue to show evidence for left ventricular dysfunction. Although the claimant has improved clinically with appropriate therapy the claimant remains mildly limited and his prognosis is guarded.

CONFLICT OF INTEREST:
I certify that I have no past or present relationship with the Member and no significant past or present relationship with the Attending Physician and/or facility. I further certify that there is no professional, familial, financial or other affiliation, relationship or interest with the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the Member whose treatment is the subject of this review. Any affiliation that I may have with this client, or as a participating physician in

**Peer Review Analysis®**
Case #:  10544769                                      Page 4 of 4

this client's network, at no time constituted more than five percent of my gross annual
income.


Mark Friedman, MD
Boarded:  Internal Medicine
Boarded:  Internal Medicine/Cardiovascular Disease

| State | | License # |
|---|---|---|
| Arizona | | 8918 |
| New Jersey | MA | 26003 |
| Oklahoma | | 13203 |
| 02/07/2003 | | |

Date: 02/03/03  Time: 08:15 AM  To: William Harney @ 17812350784 0300          Core Inc. Boston          Page: 001-002

# Peer Review Analysis®

## MCMC llc

**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**

**Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                    *Pages:* 2

*From:* PRA Customer Service Team          *Date:* February 03, 2003

*Subject:* Daily Status Report                *Time:* 8:05:58 AM

*Note:* *For expeditious resolution of all non-clinical questions, call PRA's Customer Service team at 800-648-7414.*

*Our representatives are trained to assist you with all inquiries such as case status updates, fax problems, changes in Attending Physician telephone numbers, and any other non-clinical questions.*

RECEIVED
FEB 03 2003
LONG TERM DISABILITY

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal service. You will be reimbursed for your postage expense. Thank you.

02/03/03

Client: 5971          Office: WELLESLEY HILLS

Peer Review Analysis
Status Report of Referrals by Office - Open Cases

Fax Number: 17812350784  Attention: William Harney

Page 1

| Referral Date | Due Date | PRA Case | Patient Name | Patient SSN | Type | Service | Sub-Service | Referring RN | PRA Team | Ph Ext |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/31/03 | 02/07/03 | 10544769 | GOLDEN, HERBERT | 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 | DIS-MED | APPEAL | STANDARD | KING, MARIE | 3 | |

# Peer Review Analysis®

## MCMC llc

**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**

**Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                     *Pages:* 2

*From:* PRA Customer Service Team                     *Date:* February 04, 2003

*Subject:* Daily Status Report                     *Time:* 8:07:34 AM

*Note:* For expeditious resolution of all non-clinical questions, call PRA's Customer
Service team at 800-648-7414.

Our representatives are trained to assist you with all inquiries such as case status
updates, fax problems, changes in Attending Physician telephone numbers, and
any other non-clinical questions.



RECEIVED
FEB 0 4 2003
LONG TERM DISABILITY

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain
information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this
transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of
this communication is strictly prohibited. If you have received this communication in error, notify us immediately by
telephone, and return the original message to us at the above address via the U.S. Postal service. You will be
reimbursed for your postage expense. Thank you.

02/04/03

Client: 5971      Office: WELLESLEY HILLS

Peer Review Analysis
Status Report of Referrals by Office - Open Cases

Fax Number: 17812350784  Attention: William Harney

Page 1

| Referral Date | Due Date | PRA Case | Patient Name | Patient SSN | Type | Service | Sub-Service | Referring RN | PRA Team | Ph Ext |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/31/03 | 02/07/03 | 10544769 | GOLDEN, HERBERT | 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 | DIS-MED | APPEAL | STANDARD | KING, MARIE | 3 | |

# Peer Review Analysis®

## MCMC llc
**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**

**Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                    *Pages:* 2

*From:* PRA Customer Service Team            *Date:* February 05, 2003

*Subject:* Daily Status Report               *Time:* 8:07:14 AM

*Note:* For expeditious resolution of all non-clinical questions, call PRA's Customer
Service team at 800-648-7414.

Our representatives are trained to assist you with all inquiries such as case status
updates, fax problems, changes in Attending Physician telephone numbers, and
any other non-clinical questions.



RECEIVED
FEB 05 2003
LONG TERM DISABILITY

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain
information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this
transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of
this communication is strictly prohibited. If you have received this communication in error, notify us immediately by
telephone, and return the original message to us at the above address via the U.S. Postal service. You will be
reimbursed for your postage expense. Thank you.

02/05/03

Page 1

Peer Review Analysis
Status Report of Referrals by Office - Open Cases

Client: 5971        Office: WELLESLEY HILLS        Fax Number: 17812350784   Attention: William Harney

| Referral Date | Due Date | PRA Case | Patient Name | Patient SSN | Type | Service | Sub-Service | Referring RN | PRA Team | Ph Ext |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/31/03 | 02/07/03 | 10544769 | GOLDEN, HERBERT | 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 | DIS-MED | APPEAL | STANDARD | KING, MARIE | 3 | |

# Peer Review Analysis®

**MCMC llc**
**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**

**Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                            *Pages:* 2

*From:* PRA Customer Service Team                    *Date:* February 06, 2003

*Subject:* Daily Status Report                       *Time:* 8:07:14 AM

*Note:* For expeditious resolution of all non-clinical questions, call PRA's Customer
Service team at 800-648-7414.

Our representatives are trained to assist you with all inquiries such as case status
updates, fax problems, changes in Attending Physician telephone numbers, and
any other non-clinical questions.



This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain
information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this
transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of
this communication is strictly prohibited. If you have received this communication in error, notify us immediately by
telephone, and return the original message to us at the above address via the U.S. Postal service. You will be
reimbursed for your postage expense. Thank you.

02/06/03            Office:  WELLESLEY HILLS                                                      Page 1

                                    Peer Review Analysis
                        Status Report of Referrals by Office -- Open Cases

Client: 5971                   Fox Number: 17812350784  Attention: William Harney

Referral                                                                                    PRA
Date     Due Date  PRA Case  Patient Name      Patient SSN  Type     Service   Sub-Service  Referring RN   Team  Ph Ext

01/31/03  02/07/03  10544769  GOLDEN, HERBERT   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  DIS-MED  APPEAL    STANDARD     KING, MARIE           3

# Peer Review Analysis®

## MCMC llc

**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**

**Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                    *Pages:* 2

*From:* PRA Customer Service Team            *Date:* February 07, 2003

*Subject:* Daily Status Report               *Time:* 8:06:48 AM

*Note:* *For expeditious resolution of all non-clinical questions, call PRA's Customer Service team at 800-648-7414.*

*Our representatives are trained to assist you with all inquiries such as case status updates, fax problems, changes in Attending Physician telephone numbers, and any other non-clinical questions.*

```
┌─────────────────────────────┐
│        RECEIVED             │
│                             │
│      FEB 0 7 2003           │
│                             │
│   LONG TERM DISABILITY      │
└─────────────────────────────┘
```

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal service. You will be reimbursed for your postage expense. Thank you.

02/07/03                                                                                      Page 1

                              Peer Review Analysis
                     Status Report of Referrals by Office - Open Cases

Client: 5971    Office: WELLESLEY HILLS        Fax Number: 17812350784  Attention: William Harney

                                                                                          PRA
Referral                                                                          Referring RN  Team  Ph Ext
Date    Due Date  PRA Case  Patient Name    Patient SSN  Type  Service  Sub-Service

01/31/03  02/07/03  1D544769  GOLDEN, HERBERT  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  DIS-MED  APPEAL  STANDARD  KING, MARIE  3

# MCMC LLC

Remittance Address:
P.O. Box 37207
Baltimore, MD 21297-3207

| Date 03/03/03 | Invoice # 0000008894 |
|---|---|
| Page 1 | Purchase Order |

TO:  SUN LIFE FINANCIAL
WILLIAM J. HARNEY, CRC
ONE SUN LIFE EXECUTIVE PARK
POST OFFICE BOX 81830
WELLESLEY HILLS, MA  02481

| Date | Description | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| 02/01 - 02/28 | Peer Review Analysis fee (see attached detail report) | | | $1,610.00 |

RECEIVED
MAR 0 6 2003
LONG TERM DISABILITY

| | Terms: Net 30 days | | | |
|---|---|---|---|---|
| | Finance Charge: 1.50% Charge on past due balance | **TOTAL DUE** | | $1,610.00 |

Tax ID Number 14-1847542
For billing inquiries, please call 1-800-227-1464 ext. 7737

```
03/03/03                                                                                        PAGE   1
11:15
                                              WELLESLEY HILLS
                                  DETAIL REPORT TO SUPPORT INVOICE # 0000008894
                    SUN LIFE FINANCIAL REPORT FOR ALL WELLESLEY HILLS REFERRALS FROM 02/01/03 TO 02/28/03
```

| TY REFERRAL | COMPLETE | PRA CASE # | PATIENT LAST NAME | PATIENT FIRST NAME | SS NUMBER | SERVICE | TIME/HRS | UNIT FEE | FEE | FIELD #1 | FIELD #2 | TAT | TIER |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| D 02/21/03 | 02/27/03 | 10548629 | | | | APPEAL STANDARD | 3.50 | 190.00 | 665.00 | | 77220 | 2 | 1 |
| D 01/31/03 | 02/07/03 | 10544769 | GOLDEN | HERBERT | 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 | APPEAL STANDARD | 3.50 | 270.00 | 945.00 | | 61976 | 2 | 2 |

2 CASE(S)  DIS-MED SU APPEAL STANDARD          TOTAL:   7.00          $1,610.00

2 CASE(S)                    TOTAL FOR COMPANY: WELLESLE                $1,610.00



03/03/03
11:15

PAGE 2

WELLESLEY HILLS
DETAIL REPORT TO SUPPORT INVOICE # 0000008894
SUN LIFE FINANCIAL REPORT FOR ALL WELLESLEY HILLS REFERRALS FROM 02/01/03 TO 02/28/03

| TY REFERRAL COMPANY PRA | PATIENT | PATIENT | | | | UNIT | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PE DATE DATE CASE # | LAST NAME | FIRST NAME | SS NUMBER | SERVICE | TIME/HRS | FEE | FEE | FIELD #1 | FIELD #2 | TAX TIER |
| | | | | TOTAL FOR INVOICE #: 0000008894 | 7.00 | | $1,610.00 | | | |

2 CASE(S)



Sun Life Assurance
Company of Canada
SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

1-800-247-6875

August 10, 2007

Herbert Golden
25 Peachwood Drive
Tallahassee, AL  36078

RE:     Policy No:     61976-GD-Long Term Disability
        Control No:    081001-20002-00

Dear Mr. Golden:

The review of your appeal for continued group long term disability benefits has been completed. It has been determined that the decision to terminate benefits was appropriate and will not be altered. You received benefits from November 18, 2001 through February 15, 2007; no further benefits will be paid.

The policy under which you received benefits defines "Total Disability" as follows:

***Total Disability or Totally Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonable qualified for by education, training or experience.*

You received benefits for 24 months, from November 18, 2001 through November 17, 2003, based upon your inability to return to your occupation as President and COO of Seydel Companies. After November 17, 2003, you must be unable to perform any occupation, as outlined in the policy, for monthly benefits to continue.

Herbert Golden
August 10, 2007
Page 2

The policy also states:

*Termination of Long Term Disability Benefits*

*Total or Partial Disability Benefits will cease on the earliest of:*

*...9. after the first 24 months of Total or Partial Disability, the date Sun Life determines the Employee is able to perform on a full-time basis, any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience, even if the Employee chooses not to work.*

Although William Ross Davis, MD, has consistently stated that you are unable to work, he has submitted Attending Physician's Statements that contradict this position. On June 24, 2003 Dr. Davis submitted a statement indicating that you are capable of performing Light physical exertion; the same was stated on a form completed by Dr. Davis dated August 26, 2004. On June 8, 2006, Dr. Davis indicated that you have a class four physical restriction and are capable of Sedentary physical exertion.

In December 2002, George Pilippides, MD, Director, Coronary Care Unit, Boston Medical Center reviewed your file and opined that:

> "On the basis of this [September 3, 2002] exercise capacity most cardiology texts and most cardiologists would place Mr. Golden in a class I NYHA rather than class III as class III implies that the patient is having limiting symptoms with minimal exertion. This does not appear to be the case from the objective data before me...this patient should be able to perform work that occasionally requires air travel without significant cardiovascular risk."

Dr. Philippides' report was provided to Dr. Davis who commented: "He [Dr. Philippides] is using an older classification scheme that is no longer considered appropriate."

Due to this disagreement, a second medical opinion was sought. In January 2003, Mark Friedman, MD, Board Certified in Internal Medicine and Cardiovascular Disease, reviewed your file. Upon review, Dr. Friedman wrote:

> "Initially the claimant had significant limitation in his physical ability due to dyspnea however with proper diet, exercise and appropriate medical therapy the claimant seems to have improved significantly. The claimant had an exercise stress test in 09/2002 that demonstrated a ten minute exercise tolerance and he achieved 92 percent of his predicted maximum heart rate. This objective measure of the claimant's exercise ability is sufficient to classify the claimant's current Clinical Class with respect to the Hypertensive Cardiovascular Disease and Left Ventricular Dysfunction as Class I to at

Herbert Golden
August 10, 2007
Page 3

most Class II. The claimant is not limited by symptoms pf angina pectoris and thus the Clinical Class with respect to his Atherosclerotic Cardiovascular Disease, Coronary Artery Disease is Clinical Class I. Dr. Davis questions the use of the well established New York Heart Association (NYHA) classification of heart disease and the clinical classification used by the NYHA. Dr. Davis claims that this is an older classification scheme that is no longer appropriate. I am not aware of a classification that is more widely accepted than the NYHA classification and with it the designation of clinical class that relates to a persons symptoms with the degree of physical exertion needed to produce these symptoms. All of the classifications used to identify patients in

need of cardiac transplant rely on the clinical classification system described in the NYHA Classification. Dr. Davis questions that claimant's current clinical classification as Class I, as stated by Dr. Phillipides, stating that his observation of the claimant would classify the claimant as Class II to III. Class III symptoms are defined as symptoms that occur with less than normal daily routine activity. At the time of the diagnosis in 2001 the claimant may have been Class III however based on the claimant's current evaluation and his exercise duration of ten minutes on an exercise test in 09/2002 the claimant can no longer be classified as Clinical Class III and is probably best classified as Clinical Class I, maybe barely Class II.

"Although the claimant has made significant improvement in his clinical condition with diet, exercise and appropriate medical therapy the patient continues to have evidence for depressed left ventricular function on echocardiograms and on nuclear studies of his ventricular function. In order for the claimant to continue to improve he needs to continue his current regime and he needs to discontinue his cigarette smoking. With evidence for continued left ventricular dysfunction the claimant cannot return to his previous level of vigorous activity and travel required on his job as President of Sydel International. The claimant's current physical ability, as objectively observed on the stress test of 09/2002, would allow the claimant to do at least sedentary work and probably light work. The claimant would have restrictions on the work environment and ability to travel by commercial air..."

Prior to the termination of benefits in February 2007, your file was reviewed by William J. Hall, MD. Dr. Hall is an internal medicine specialist who consults for Sun Life. Upon review of recent medical records, Dr. Hall wrote:

"Cardiovascular reevaluation of Herbert Golden by Dr. [Davis] 5-15-06 elicited no cardio-pulmonary symptoms experienced by Mr. Golden. Mr. Golden complained of low back and shoulder pain. Cardiovascular and pulmonary examinations noted to be within normal limits. Neurologic or musculoskeletal examinations not performed. Radionuclide MLET 5-15-06 again identified LV inferior wall scarring. LV EF 68%. Echo-cardiography again showed mild aortic valve thickening and stenosis without clinically significant blood flow obstruction. Dr. [Davis] concluded Herbert Golden 'doing well'

Herbert Golden
August 10, 2007
Page 4

regarding coronary artery disease and assigned A.H.A. class I cardiac function capacity...Corrections...Dr. Davis assigned Herbert Golden N.Y.H.A. class I cardiac functional capacity clinical note 5-15-06, not A.H.A. class I cardiav functional capacity...I am not able to identify current primary source clinical information with which to support Dr. W. Ross Davis' prohibition of work and stress, in context of class four physical impairment exertional limits [capable of sedentary activity], for Herbert Golden or to support assigned restrictions of limb and trunk activities..."

On appeal, Dr. Davis maintains his position that you are unable to work; however, he provides no recent test results or examination records to support this. It appears reasonable, based upon three independent physician reviews of your file (the most recent in December 2006), that you have the capacity to perform at the Sedentary level of exertion. This capacity may have prevented you from returning to the occupation you performed with Seydel but does not preclude all work activity.

"Sedentary Work" is defined in the United States Department of Labor's *Dictionary of Occupational*

*Titles* as follows:

> "Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met."

In December 2006 your file was reviewed by Jacqueline Pickering, CRC, with The Sierra Group, a rehabilitation consulting firm. Based upon her review of your education and work experience, Ms. Pickering identified the following transferable skills:

1. Extensive knowledge of operations and management within the specialty chemical industry, to direct the development and management of the entire infrastructure of a company.
2. Skill/experience in strategic planning, and the ability to take decisive action to adjust to changes/trends in a highly global industry.
3. Skill/experience in examining and analyzing statistical data to budget profit and loss objectives, and the skill experience in managing the profitability of production to ensure the company remains within established projections.
4. Exceptional verbal/written communication skills to direct and mentor management team members to effectively execute operational/sales/ distribution procedures to ensure high levels of customer satisfaction/customer retention.
5. Skill/experience with contract negotiations, company promotion, and planning to ensure the company maintains solid market share.

Herbert Golden
August 10, 2007
Page 5

Ms. Pickering also wrote:

> "Given the insured's education, skills, and experience, industry professionals indicated that he could act as process consultant within the specialty chemicals industry to assist companies to improve production, growth and profits. Thus taking on long-term project assignments that would limit him to on-site activity with the given manufacturer. He could also take on the role of COO, allowing the CEO and Sales/Marketing staff to do travel for business development/contract negation/account management for national and overseas markets. He could work with cities and chambers of commerce as an ambassador to overseas business ventures coming to the US.

> "He could consider one of the following sedentary positions, where travel is limited to 1-2 times per year and industry professionals note that the requirements for over 10 years of experience would typically allow for a salary range from $100,000-$150,000 plus bonus.

> "Positions currently available with the industry's professional associations:

> "1. Assistant Director of Membership Marketing with the American Chemistry Society

> "2. Manager of Training and Development with the American Chemistry Council (Chemtrec)

"3. Manager of Marketing and Communications with the American Chemistry Council's (Chemtrec)

"Positions involving outsourcing the sale of surplus chemicals in a sales (all inside sales) or executive capacity:

"4. Production Manager—Outsourcing for Specialty Chemical Manufacturing Company.

As noted above, these positions offer earnings from $100,000 to $150,000, plus bonus pay. The policy defines "Gainful Occupation" as follows:

**Gainful Occupation** *means employment that is or can be expected to provide an Employee with an income of at least 60% of his Indexed Total Monthly Earnings.*

Hergert Golden
August 10, 2007
Page 6

**Indexed Total Monthly Earnings** *means the Employee's Total Monthly Earnings prior to the date his Total or Partial Disability began adjusted on the first of the month following 12 calendar months of Partial Disability benefit payments and each annual anniversary thereafter. Each adjustment to the Indexed Total Monthly Earnings is the lesser of 10% or the current annual percentage increase in the Consumer Price Index for Wage Earners and Clerical Workers as published monthly by the U.S. Department of Labor. Sun Life reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the Consumer Price Index.*

Your monthly earnings, with commissions, equaled $18,974.00 when your interruption in work began in 2001. Indexed each anniversary with the annual CPI through November 2006, the Indexed Total Monthly Earnings amount is $21,528.43 per month, or $258,341.16 annually. 60% of this amount (the gainful requirement) is $155,000.00. The occupations identified above provide earnings up to $150,000.00 per year before any bonus pay.

Please note that the listed occupations are not intended to be an all-inclusive list of return to work opportunities that may exist. The purpose, rather, is to demonstrate that other Gainful Occupations are available.

The medical documentation on file does not support a less than sedentary capacity, and sedentary Gainful Occupations for which you have the education, training and experience have been identified. Although you have received monthly long term disability benefits for greater than 12 months, the information on file no longer supports continued benefit payment. For this reason, no further benefits will be paid and your claim will remain closed. We regret that this decision could not be more favorable but must abide by the requirements of the policy.

Your appeal also included a letter from Randal Herring, DC. However, according to a documented

telephone conversation on May 15, 2006, you do not require regular treatment for your back pain following surgery.

This concludes the handling of your appeal and all administrative remedies have been exhausted. You may have the right to bring a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), §502(a).

Herbert Golden
August 10, 2007
Page 7

If you have any questions or concerns regarding this decision, please feel free to contact me at (877) 260-9778, extension 7102.

Sincerely,

Brian Sullivan
Benefit Consultant
LTD Appeals