THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HERBERT JACK GOLDEN, )
)
    Plaintiff, )
)
    v. )    C.A. No.  2:08-CV-70-WKW
)
SUN LIFE FINANCIAL, INC.; )
SUN LIFE ASSURANCE )
COMPANY OF CANADA; PEER )
REVIEW ANALYSIS, INC.; )
MCMC, LLC; and THE SEYDEL )
COMPANIES EMPLOYEE )
BENEFIT PLAN, )
)
    Defendants. )

## REPLY MEMORANDUM OF DEFENDANT MCMC LLC TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant MCMC LLC ("MCMC") submits this memorandum in reply to the memorandum of the plaintiff, Herbert Jack Golden ("Golden"), opposing MCMC's motion for summary judgment ("Pl. Memo").

## INTRODUCTION

The gist of MCMC's position is that the undisputed evidence shows that it was not an ERISA fiduciary because it simply provided peer review services to Sun Life Assurance Company of Canada ("Sun Life") which has admitted that it made the decision to terminate Golden's long term disability ("LTD") benefits. Thus, MCMC could not be a fiduciary because it did not have any authority over the plan in question.

Golden first argues that he has produced sufficient evidence showing that Sun Life used services and information provided by MCMC to deny his claim for LTD benefits and that is adequate to show that MCMC is a fiduciary. MCMC disagrees, and

asserts that Golden's concept of an ERISA fiduciary is completely incorrect. Furthermore, Golden's assertion that he has produced evidence that Sun Life used MCMC's services and information to deny his claim for benefits is totally false. Indeed, Golden does not cite to any such evidence, and MCMC asserts that there is no document in the record that supports even an inference to that effect.

In fact, Golden's representation that such evidence even exists is in error. The administrative record, which Sun Life produced on April 18, 2008, shows that MCMC's involvement in this matter was negligible and occurred four years before Sun Life decided to terminate plaintiff's benefits.

Golden's fallback position is that the Court should postpone summary judgment to allow him to pursue discovery to see if he can uncover evidence that might show that MCMC was a fiduciary. This, of course, represents the classic excuse of a plaintiff who drags a defendant into a baseless lawsuit and then thinks that he should be allowed to go fishing in the hope that he will find something to support his claims. Golden did not allege anything in his complaint that suggested that MCMC was a fiduciary or that he had any basis for suing MCMC. Hence, MCMC should not be put through the discovery process when Golden did not have a good faith basis to name MCMC as a defendant in the first place.

The undisputed evidence establishes that Sun Life is the fiduciary and MCMC's summary judgment motion should be granted. The facts and the law also demonstrate unequivocally that Golden's claims against MCMC are objectively frivolous. For this reason, MCMC should be awarded its reasonable attorneys' fees and costs under either this Court's inherent authority to make such an award or ERISA as a prevailing party.

## ARGUMENT

**I.    The Undisputed Evidence Establishes That MCMC Is Not A Fiduciary Of The ERISA Plan At Issue In This Action**

Golden's argument begins with an inaccurate description of an ERISA fiduciary and goes downhill from there. Golden states that "because MCMC provided services and information used to deny [his] claim for LTD benefits, it is an ERISA fiduciary." (Pl. Memo, p. 2). This assertion is legally absurd as shown by Golden's inability to cite even one case for that proposition. The truth is that MCMC's scant involvement in providing a medical review of the plaintiff's medical records, years before the decision to terminate his benefits, does not even come close to the definition of an ERISA fiduciary. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

Golden's failure to cite such a case is not surprising given that his definition of an ERISA fiduciary is completely at odds with the definition of a fiduciary found in ERISA (which Golden quotes and then ignores (Pl. Memo, p. 2)), and the case law cited by MCMC in its summary judgment memorandum. It could not be more apparent from that definition and the abundant case law interpreting it that the essential feature of an ERISA fiduciary is the authority to make decisions about plan matters, such as eligibility for benefits.

Moreover, Golden simply ignores the cases invoked by MCMC, particularly *Naslund v. Liberty Life Assur. Co. of Boston*, 2006 WL 1281664 (M.D.Fla. 2006). In that case, even a claims administrator was found not to be a fiduciary because it only performed ministerial functions. If a claims administrator does not qualify as a fiduciary, how can MCMC be a fiduciary if Sun Life only allegedly "used" some alleged "services

3

and information" provided by MCMC to terminate Golden's benefits?  In any case, Sun Life has admitted in its answer that it alone made the decision to terminate Golden's LTD benefits. (Answer of Defendants Sun Life Financial, Inc. and Sun Life Assurance Company of Canada, ¶ 23; *see also* Sun Life's Response to the Court's April 17, 2008 Briefing Order, pp. 2-3 & n. 4.). Thus, Sun Life is clearly the fiduciary of the plan in question and Golden's legal position that MCMC is a fiduciary is not "warranted by existing law."  Fed.R.Civ.P. 11(b)(2).

**A.     Golden has not Produced any Evidence that MCMC Provided Services and Information to Sun Life That Was Used To Deny His Claim for LTD Benefits**

Golden's assertion that MCMC was involved in the denial of his LTD benefits is also not warranted by the facts. Indeed, Golden's statement is not even consistent with what he has alleged in his complaint.

According to Golden's complaint, he filed a claim for LTD benefits after undergoing heart surgery, (Comp., ¶¶ 26-29), and that claim was approved in 2003. (Comp., ¶ 45). After receiving such benefits for four years, Sun Life notified Golden in February 2007 that it had decided to terminate his benefits. (Comp., ¶ 63; Answer of Defendants Sun Life Financial, Inc. and Sun Life Assurance Company of Canada, ¶ 23). It is also undisputed that Golden received a copy of his claim file from Sun Life before filing this action. (Comp., ¶ 73). In addition, Sun Life provided the administrative record to Golden's attorneys on April 18, 2008.

Fed.R.Civ.P. 56(e)(2) states that the opposing party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." In order to even to satisfy his own unique definition of an ERISA fiduciary, Golden must at a

4

minimum cite to evidence in the record that shows that MCMC provided "services and information" to Sun Life and that Sun Life "used" such services and information to "deny [sic] [his] claim for LTD benefits" (Pl. Memo, p. 2). Golden cites no such evidence.

Moreover, since Golden has been provided with Sun Life's claims file and the administrative record, then he has no excuse for not providing evidence to support that assertion. Golden's failure to adduce such evidence unequivocally demonstrates that he did not have a good faith factual basis for naming MCMC as a defendant in this action and he does not have a good faith basis for opposing MCMC's summary judgment motion on the ground that such evidence exists.

### B.    Golden's Assertion that Sun Life Used Information Provided by MCMC to Terminate His LTD Benefits is Blatantly False

What is most disturbing about Golden's assertion that Sun Life used information provided by MCMC to terminate his LTD benefits is that it is blatantly false. The claims file and administrative record establish that or about January 31, 2003, Sun Life requested that MCMC have one of its doctors review Golden's claim for LTD benefits. [1] (*See* documents numbered 0000173-174 which are found in the administrative record and are attached to the Declaration of Steven F. Casey ("Casey Decl.")). On February 7, 2003, MCMC provided Sun Life with a Case Report prepared by Dr. Mark Friedman containing his recommendations about Mr. Golden's claim. (*See* documents attached to Casey Decl. numbered 0000183-187). After receiving Dr. Friedman's Case Report, Sun

---

[1] MCMC is aware that it may not introduce new evidence in a reply brief. However, Golden did not allege in his complaint that MCMC was a fiduciary because it provided services and information to Sun Life that was used to deny his claim for benefits. Thus, MCMC could not anticipate that Golden would make such an argument in his opposition memorandum and Golden has made that assertion without citing any record evidence. Thus, MCMC should be allowed to rebut Golden's misrepresentation to this Court about MCMC's role in this matter.

Life approved Golden's claim for LTD benefits.

That Case Report constituted the only involvement MCMC had with Mr. Golden's claim. Moreover, the February 15, 2007, letter in which Sun Life advised Golden that his benefits were being terminated, did not even reference the Case Report! (See documents attached to Casey Decl. numbered 0000613-617). MCMC and Sun Life also prepared a stipulation to that effect and provided it to Golden's attorney by e-mail on April 7, 2008 in an effort to get MCMC dismissed from this case, but Golden's attorney stated in an e-mail dated March 28, 2008 that the stipulation was not acceptable. (Casey Decl., ¶ 3). Thus, it is absolutely false for Golden to claim that Sun Life used Dr. Friedman's Case Report dated February 7, 2003 to terminate his LTD benefits four years after Dr. Friedman's report.

## II.    Summary Judgment is Appropriate in the Absence of Discovery

Golden's remaining arguments fare no better. He claims that MCMC's summary judgment motion should be denied because MCMC has not responded to his discovery requests or made any initial disclosures. But all of the documents reflecting MCMC's involvement in this case are in the possession of Golden's attorneys. Moreover, since Golden would not accept the stipulation offered by MCMC and Sun Life, there was no reason for MCMC to incur additional expenses by participating in discovery that would have added nothing to what Golden knew and had been told.

Moreover, in paragraph 2 of the Report of Parties' Planning Meeting in this case, the following language addressed MCMC's position regarding document production: "MCMC, not being aware of what the contents are of the Sun Life administrative record, expects that it has no documents that should be produced pursuant to Fed. R. Civ. P. 26(a)."

6

Additionally, Golden is effectively admitting that he has no factual basis for his assertion that MCMC provided information to Sun Life that led to the termination of his LTD benefits. Golden's position is typical of the "sue first, then try to use discovery to find evidence" approach that is contrary to his obligation to make sure that he does not make "factual contentions [that] have [no] evidentiary support." Fed.R.Civ.P. 11(b)(3).

In addition, Fed.R.Civ.P. 56(f) states that if the party opposing a summary judgment motion requires discovery to oppose the motion, it must show "by affidavit that, for specified reasons, it cannot present facts to justify its opposition." The Eleventh Circuit has recently made it clear that a plaintiff must file an affidavit or other evidence if it relying on Rule 56(f). *See, e.g., Robinson v. Adventist Health Sys.,* 295 Fed. Appx. 245, 246 (11th Cir. 2007) (stating that "a party opposing summary judgment must provide the court with an affidavit justifying the need for additional discovery" and holding that it was not an abuse of discretion to deny a Rule 56(f) motion because the plaintiff did not file an affidavit); *Bevan v. Durling,* 243 Fed. Appx. 458, 463-64 (11th Cir.2007) ("Pursuant to Rule 56(f), a party opposing summary judgment must provide the court with an affidavit justifying the need for additional discovery").

Without specifically invoking Rule 56(f), Golden wants the benefits of that Rule, but his attorney has not provided an affidavit containing the specified reasons why any discovery of MCMC is necessary. Moreover, even ignoring that failure, Golden does not set out in specific terms why, even though he has the administrative record and claim file, he "cannot present facts essential to justify [his] opposition" to MCMC's motion. Fed.R.Civ.P. 56(f). Of course, since Sun Life has admitted that it is the administrator of the ERISA plan at issue, Golden's pursuit of discovery is a waste of MCMC's time and

7

money.

Golden's final argument is a farrago of his first two arguments. Golden contends that "to the extent that MCMC argues that [he] has presented insufficient evidence that it is an ERISA fiduciary and this Honorable Court is not satisfied of MCMC's role as ERISA fiduciary based on the evidence submitted thus far, . . . .this Honorable Court [should] postpone ruling on MCMC's Motion for Summary Judgment until the completion of discovery." (Pl. Memo, pp. 4-5). Nothing need be said about this "argument" other than to point out that that it is incomprehensible how Golden, who has produced no evidence, can even claim he has "presented insufficient evidence."

> **IV.  MCMC Should Be Awarded Its Reasonable Attorney's Fees And Costs As A Sanction For Golden's Bad Faith In Naming MCMC As A Defendant And Opposing MCMC's Motion For Summary Judgment Or For Being A Prevailing Party Under ERISA**

As explained above, the law and the facts concerning MCMC's involvement in this matter establish beyond doubt that Golden had no reasonable basis to believe at the time the complaint was filed that MCMC was the fiduciary of the plan in question. Moreover, he has compounded his bad faith by: (1) failing to accept the proposed stipulation about MCMC's involvement in this matter; (2) falsely stating that Sun Life relied on a four year old report prepared by an MCMC physician reviewer to deny Golden's claim LTD benefits; and (3) maintaining an untenable legal position regarding MCMC's status as a fiduciary. As of the date this action was filed, no reasonable attorney, in possession of Golden's claims file, could have concluded that anyone other than Sun Life was the plan administrator/fiduciary and that MCMC's connection with Golden's claim had ended approximately five (5) years before. Hence, sanctions are

appropriate because Golden  has acted in bad faith by exhibiting a "deliberate indifference to obvious facts" and the law. *See Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).

### A.    Sanctions are Appropriate Under the Court's Inherent Authority

The United States Supreme Court has held that district courts have inherent authority to levy sanctions against attorneys who abuse the litigation process. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46-47 (1991).  Thus, a court may assess attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers,* 501 U.S. at 45-46 (citations omitted). The imposition of sanctions pursuant to a court's inherent authority serves the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.*

"The key to unlocking a court's inherent power is a finding of bad faith." *Allapattah Sens., Inc. v. Exxon Corp.,* 372 F.Supp.2d 1344, 1373 (S.D.Fla.2005). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Id., citing Chambers,* 501 U.S. at 46; *Malautea v. Suzuki Motor* Co. *Ltd.,* 987 F.2d 1536, 1545-46 (11th Cir.1993) (affirming district court's award of default judgment for violation of discovery orders, award of attorney's fees and costs, and additional fines under the court's inherent powers)).

Golden's attorneys have knowingly or recklessly raised a frivolous legal argument and misstated MCMC's involvement in the termination of his LTD benefits.

9

Moreover, the obstinate conduct of Golden's attorneys in refusing to dismiss MCMC after MCMC filed its summary judgment motion makes the case for sanctions even more compelling. A litigant is subject to potential sanctions for continuing to maintain an untenable position. *See Ruszala v. Walt Disney World Co.,* 132 F.Supp.2d 1347, 1352 (M.D.Fla.2000). "A litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Id.*

### B.    MCMC Should be Awarded its Reasonable Attorneys' Fees and Costs as a Prevailing Party Under ERISA

A district court, in its discretion, may award a reasonable attorney's fee and costs to any prevailing party in an ERISA action. 29 U.S.C. § 1132(g)(1). "'The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action.'" *Wright v. Hanna Steel Corp.,* 270 F.3d 1336, 1344 (11th Cir. 2001). The Eleventh Circuit has held that five factors should be used to determine whether to award attorney fees in an ERISA action: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Id.* at 1344. "'No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address.'" *Id.* at 1345

10

(citation omitted). A district court may also consider only those factors it deems important. *See Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1485 (11th Cir. 1995).

MCMC has shown that Golden acted in bad faith in making a MCMC a party to this action and refusing to dismiss MCMC after being informed that Sun Life was the fiduciary. Thus, factors one and five weigh in favor of a fee award. In addition, Golden and his attorneys have the ability to pay any fee award and such an award would deter other attorneys from filing baseless claims against non-fiduciaries. Thus, four of the five factors militate in favor of awarding MCMC is reasonable attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the Court should grant MCMC's motion for summary judgment and award MCMC its reasonable attorney's fees and costs incurred in defending against plaintiff's claims.

Respectfully submitted this 21st day of May 2008.

/s/ Steven F. Casey
Steven F. Casey
Balch & Birmingham LLP
1901 Sixth Avenue North, Ste. 1500
Birmingham, AL  35203-2015
Telephone: (205) 226-3454
Facsimile: (205) 488-5848
scasey@balch.com
Counsel for MCMC, LLC

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 21st, 2008, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis
Campbell, Gidiere, Lee, Sinclair & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209

David B. Hall
Julie C. Metheny
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
420 North 20th Street, Suite 1600
Birmingham, AL 35203

Christopher Morris
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
One American Place
301 N. Main Street, Suite 810
Baton Rouge, LA 70825

Charles A. Stewart III
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104

Amelia T. Driscoll
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203

/s/ Steven F. Casey
Steven F. Casey

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HERBERT JACK GOLDEN,     )
     )
    Plaintiff,     )
     )
    v.     )    C.A. No.  2:08-CV-70-WKW
     )
SUN LIFE FINANCIAL, INC.;     )
SUN LIFE ASSURANCE     )
COMPANY OF CANADA; PEER     )
REVIEW ANALYSIS, INC.;     )
MCMC, LLC; and THE SEYDEL     )
COMPANIES EMPLOYEE     )
BENEFIT PLAN,     )
     )
    Defendants.     )

## DECLARATION OF STEVEN F. CASEY

I, Steven F. Casey, am over 21 years old and make this declaration based on both my own personal knowledge and records produced in this action by Sun Life Assurance Company of Canada ("Sun Life").

1.    I am a partner in the law firm of Balch & Birmingham LLP, which has offices at 1901 Sixth Avenue North, Ste. 2700, Birmingham, Alabama and am counsel of record for defendant MCMC LLC ("MCMC").

2.    Attached as Exhibit A are documents numbered 0000173-174, 0000183-187, and  0000613-617 that are part of the administrative record produced by Sun Life in this action.

3.    On April 7, 2008, in an effort to persuade the plaintiff's attorneys to dismiss MCMC as a defendant, I sent an e-mail to Jenifer Wallis, an attorney for the plaintiff, and attached a proposed Stipulation between MCMC and Sun Life to that e-

mail. (That e-mail and the Stipulation are attached as Exhibit B). Ms. Wallis told me that the plaintiff still would not agree to dismiss MCMC.

I state under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of May 2008.

/s/ Steven F. Casey
Steven F. Casey

## CERTIFICATE OF SERVICE

I hereby certify that on May 21st, 2008, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis
Campbell, Gidiere, Lee, Sinclair & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL  35209

David B. Hall
Julie C. Metheny
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
420 North 20th Street, Suite 1600
Birmingham, AL  35203

Christopher Morris
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
One American Place
301 N. Main Street, Suite 810
Baton Rouge, LA  70825

Charles A. Stewart III
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL  36104

Amelia T. Driscoll
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203

/s/ Steven F. Casey
Steven F. Casey

Date: 02/03/03  Time: 08:15 AM  To: William Harney # 17812350784 0300        Core Inc. Boston        Page: 001-002

# Peer Review Analysis®

**MCMC llc**
**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**                                    **Facsimile Transmittal**

---

*To:* William Harney

*Fax Number:* 17812350784                    *Pages:* 2

*From: PRA Customer Service Team*              *Date:* February 03, 2003

*Subject: Daily Status Report*                *Time:* 8:05:58 AM

*Note: For expeditious resolution of all non-clinical questions, call PRA's Customer Service team at 800-648-7414.*

*Our representatives are trained to assist you with all inquiries such as case status updates, fax problems, changes in Attending Physician telephone numbers, and any other non-clinical questions.*



This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal service. You will be reimbursed for your postage expense. Thank you.



**GOLDEN 0000173**

Page 1

02/03/03

Peer Review Analysis
Status Report of Referrals by Office - Open Cases

Client: 5971    Office: WELLESLEY HILLS    Fax Number: 17812350784    Attention: William Harney

| Referral Date | Due Date | PRA Case | Patient Name | Patient SSN | Type | Service | Sub-Service | Referring RN | PRA Team | Ph Ext |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/31/03 | 02/07/03 | 10544769 | GOLDEN, HERBERT | ████ | DIS-MED | APPEAL | STANDARD | KING, MARIE | | 3 |

**GOLDEN 0000174**

Date: 02/07/03   Time: 12:14 PM   To: MARIE KING ( 1781-235-0784                    Page: 001-005

# Peer Review Analysis®

**MCMC llc**
**88 Black Falcon Avenue, Suite 353**
**Boston, MA 02210**                                        **facsimile transmission**

---

*To:* MARIE KING

*Company:* SUN LIFE FINANCIAL

*Office:* WELLESLEY HILLS

*Fax Number:* 1781-235-0784                    *Pages:* 5

*From: PRA Customer Service Team*            *Date:* February 07, 2003

*Subject: HERBERT GOLDEN*                     *Time:* 12:14:50 PM

*Case #:* 10544769

*Note:*

*For questions, call For questions, call CAROLE CROWLEY, Team 3, Ext 7639*



This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal service. You will be reimbursed for your postage expense. Thank you.

**GOLDEN 0000183**

# Peer Review Analysis®

### Case Report for
### SUN LIFE FINANCIAL

| | | | |
|---|---|---|---|
| **To:** | MARIE KING | **Case Number:** | 10544769 |
| **Company:** | WELLESLEY HILLS | **Office:** | WELLESLEY HILLS |
| **Review Type:** | DIS-MED SU | **Referred:** | 01/31/2003 |
| **Service:** | APPEAL | **Admit Date:** | / / |
| **Sub Service:** | STANDARD | **Discharged:** | / / |
| **Patient:** | GOLDEN, HERBERT | **Patient SSN:** | |
| **Policy:** | 61976 | **Employee SSN:** | |

**REASON FOR REFERRAL:**
Mr. Golden's long-term disability claim was reviewed by Dr. George Phillipides on November 24, 2001, October 16, 2002, and December 6, 2002, Dr. Phillipides' reviews were sent to Mr. Golden's cardiologist, Dr. Ross Davis, for comment and his response appears to disagree with Dr. Phillipides's conclusions.

1. We are seeking clarification regarding the claimant's current medical condition, how it is classified, and his ability to work. particularly, is the claimant capable of work that requires flying?

2. In addition, what are the claimant's restrictions and limitations and what is his prognosis?

**REVIEW DATA:**
Sun Life Financial Referral form, submitted medical records, letter from Dr. Roth Davis dated 01/13/2003 and reviews from Dr. George Phillipides.

**RECOMMENDATION:**
1. The claimant's current medical condition should be classified as follows; Hypertensive Cardiovascular Disease Left ventricular hypertrophy, Left ventricular systolic dysfunction Congestive Heart Failure New York Heart Assoc. Clinical Class I-II, Atherosclerotic Cardiovascular Disease, Coronary Artery Disease, Stable Angina New York Heart Assoc. Clinical Class I. The claimant is not able to resume his high pressure, stressful occupation as President of Sydel International. The claimant should be capable of working at a sedentary job or a job that requires light exertion. The claimant is capable of flying on commercial airlines however frequent travel by air, especially long flights would need to be avoided. Travel would need to be restricted to destinations that had modern medical facilities readily available.

2. The claimant's restrictions are that he needs to avoid strenuous physical exertion and high levels of emotional stress both situations that can exacerbate the

---

MCMC llc

GOLDEN 0000184

**Peer Review Analysis®**
Case #: 10544769                                                    Page 2 of 4

patient's symptoms of congestive heart failure. The claimant needs to avoid temperature extremes, high altitudes and climbing stairs or ladders. Although the claimant can fly on a commercial airline the claimant would not be able to carry heavy luggage, would need enough time between connections so that he did not need to rush to a connection, might require special meals with salt and cholesterol restriction, and he would need to avoid long flights especially in situations that had limited space that would interfere with him being mobile during the flight to avoid the risk of deep venous thrombosis and the possibility of pulmonary embolus. The claimant's prognosis is hard to predict as he can remain clinically stable on medical therapy for many years however the patient's left ventricular dysfunction may get progressively worse or the claimant's coronary artery disease could become more severe (especially if the claimant does not stop smoking) altering the claimant's prognosis for the worse.

RATIONALE:
The claimant was found to have a hypertrophied and mildly enlarged left ventricle when he was evaluated for symptoms of progressive exertional dyspnea in the summer of 2001. The claimant was noted to have significant hypertension. Further study revealed significant single vessel coronary artery disease, however the claimant's left ventricular dysfunction was felt to be out of proportion to the coronary artery disease. Since the patient had predominantly left ventricular hypertrophy without significant left ventricular dilatation and since the patient was found to have uncontrolled hypertension the most likely explanation for the patient's left ventricular hypertrophy and the left ventricular dysfunction is Hypertensive Cardiovascular Disease. The presence of coronary artery disease on coronary angiography would also classify the claimant as having Atherosclerotic Cardiovascular Disease. Thus the claimant has two separate cardiac diagnoses each contributing to the claimant's current clinical condition.

Initially the claimant had significant limitation in his physical ability due to dyspnea however with proper diet, exercise and appropriate medical therapy the claimant seems to have improved significantly. The claimant had an exercise stress test in 09/2002 that demonstrated a ten minute exercise tolerance and he achieved 92 percent of his predicted maximum heart rate. This objective measure of the claimant's exercise ability is sufficient to classify the claimant's current Clinical Class with respect to the Hypertensive Cardiovascular Disease and Left Ventricular Dysfunction as Class I to at most Class II. The claimant is not limited by symptoms of angina pectoris and thus the Clinical Class with respect to his Atherosclerotic Cardiovascular Disease, Coronary Artery Disease is Clinical Class I. Dr. Davis questions the use of the well established New York Heart Association (NYHA) classification of heart disease and the clinical classification used by the NYHA. Dr. Davis claims that this is an older classification scheme that is no longer appropriate. I am not aware of a classification that is more widely accepted than the NYHA classification and with it the designation of clinical class that relates a persons symptoms with the degree of physical exertion needed to produce these symptoms. All of the classifications used to identify patients in need of cardiac transplant rely on the clinical classification system described in the NYHA Classification. Dr. Davis questions the claimant's current clinical classification as Class

MCMC llc

GOLDEN 0000185

**Peer Review Analysis®**
Case #: 10544769                                                        Page 3 of 4

I, as stated by Dr. Phillipides, stating that his observation of the claimant would classify the claimant as Class II to III. Class III symptoms are defined as symptoms that occur with less than normal daily routine activity. At the time of diagnosis in 2001 the claimant may have been Class III however based on the claimant's current evaluation and his exercise duration of ten minutes on a exercise stress test in 09/2002 the claimant can no longer be classified as Clinical Class III and is probably best classified as Clinical Class I, maybe barely Class II.

Although the claimant has made significant improvement in his clinical condition with diet, exercise and appropriate medical therapy the patient continues to have evidence for depressed left ventricular function on echocardiograms and on nuclear studies of his ventricular function. In order for the claimant to continue to improve he needs to continue his current regimen and he needs to discontinue his cigarette smoking. With evidence for continued left ventricular dysfunction the claimant cannot return to his previous level of vigorous activity and travel required on his job as President of Sydel International. The claimant's current physical ability, as objectively observed on the stress test of 09/2002, would allow the claimant to do at least sedentary work and probably light work. The claimant would have restrictions on the work environment and ability to travel by commercial air as outlined above.

CLINICAL SUMMARY:
The patient is a 55 year old male with a history of a hypertensive cardiovascular disease with left ventricular hypertrophy and left ventricular systolic dysfunction as well as coronary artery disease. The claimant initially was diagnosed in 2001 after complaining of progressive exertional dyspnea. The claimant has been treated with appropriate medical therapy as well as diet and exercise. The claimant has had significant improvement in his ability to do physical activity and a recent stress test demonstrated ten minute exercise duration. The claimant continues to smoke in spite of numerous recommendations to discontinue his cigarette smoking and his echocardiograms continue to show evidence for left ventricular dysfunction. Although the claimant has improved clinically with appropriate therapy the claimant remains mildly limited and his prognosis is guarded.

CONFLICT OF INTEREST:
I certify that I have no past or present relationship with the Member and no significant past or present relationship with the Attending Physician and/or facility. I further certify that there is no professional, familial, financial or other affiliation, relationship or interest with the developer or manufacturer of the principal drug, device, procedure or other therapy being recommended for the Member whose treatment is the subject of this review. Any affiliation that I may have with this client, or as a participating physician in

MCMC llc

GOLDEN 0000186

Date: 02/07/03  Time: 12:14 PM  To: MARIE KING @ 1781-235-0704                    Page: 005-005

**Peer Review Analysis®**
Case #:  10544769                                    Page 4 of 4

this client's network, at no time constituted more than five percent of my gross annual income.


Mark Friedman, MD
Boarded:  Internal Medicine
Boarded:  Internal Medicine/Cardiovascular Disease

| State | | License # |
|-------|------|-----------|
| Arizona | | 8918 |
| New Jersey | MA | 26003 |
| Oklahoma | | 13203 |
| 02/07/2003 | | |

MCMC llc

**GOLDEN 0000187**



Sun Life Assurance
Company of Canada
SC 3208
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

1-800-247-6875

February 15, 2007

Mr. Herbert Golden

Re:    **Long Term Disability**
       **Policy #: 61976**
       **Control #: 081001-20002-00**

Dear Mr. Golden:

As we discussed on Friday, February 9, 2007, we have completed a thorough review of your continued eligibility for disability benefits and have determined that benefits are no longer payable under the terms of the Policy. The Seydel Company's Long Term Disability policy requires that to receive Long Term Disability benefits, you must continue to meet the following definition of disability:

*__Total Disability or Totally Disabled__ means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.*

*The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.*

*To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.*

*__Gainful Occupation__ means employment that is or can be expected to provide an Employee with an income of at least 60% of his Indexed Total Monthly Earnings.*

**GOLDEN 0000613**

Mr. Golden, the information in the file reflects you originally stopped working on August 20, 2001 due to Coronary Artery Disease and Congestive Heart Failure. Medical information submitted by your cardiologist, Dr. W. Ross Davis indicated that you were precluded from your work as President of Seydel Industries, specifically the foreign travel and stress involved in this position. Clinical records of Dr. Davis received with your initial claim point to right coronary artery occlusion and ischemic cardiomyopathy attended by global left ventricular hypokinesis and an ejection fraction of 30 to 35%. At that time it was Dr. Davis' opinion you were to avoid foreign travel and stress.

Following a review of all of the medical information your file was referred to a vocational consultant who indicated at that time it was a reasonable expectation that a company president in your industry would travel extensively both nationally and internationally.

On December 3, 2001, your claim with Sun Life was approved and benefit payments began. We continued to request updated medical records from your health care providers and we continued to pay your claim.

As part of our ongoing claim management, medical updates were obtained. Clinical records from Dr. Davis for the period of 2002 through 2004 show you were appropriately treated and demonstrated progressive improvement of your cardiac and pulmonary symptoms. On November 18, 2003, your policy definition of disability changed to one in which you continued to be eligible for benefits if you were unable to perform the duties of any gainful occupation for which you were reasonably qualified for by education, training, and experience. At that time, Mr. Golden, we continued paying your claim and we continued to request and obtain medical updates and clinical records from your health care providers.

In order to assess your eligibility for ongoing benefits we continued to request updated medical records and disability forms from you and your treatment providers. We received Attending Physician's Statements from Dr. Davis dated June 24, 2003 and August 26, 2004. Dr. Davis, in completing these forms, continued to indicate that you had a Class 3 physical impairment, defined as "capable of light work." During this time frame we also requested and received copies of Dr. Davis' treatment notes and any accompanying test results. We also received information from you, in the form of Disability Information Updates and Claimant Activity Questionnaires. On a Claimant Activity Questionnaire completed by you on June 20, 2003, you indicated you were able to exercise daily and you also noted you were limited by stress and international travel. You completed a Claimant Activity Questionnaire on August 18, 2004 and indicated again you were able to exercise daily, you were limited by stress and international travel, and you indicated you had had back surgery performed on July 15, 2004 by Dr. Patrick Ryan.

Ongoing medical records and any accompanying test results were obtained from Dr. Davis for the time period of 2005 and 2006. We requested and received records from Montgomery Neurosurgical Associated, including office notes of Dr. Patrick Ryan. He notes on August 30, 2004 that your leg pain and low back pain are nearly completely resolved. Dr. Davis also completed an Attending Physician's Statement dated June 8, 2006 in which he indicates a Class 4 physical impairment, defined as capable of sedentary work. Dr. Davis, on this form, also noted

**GOLDEN 0000614**

that you should "avoid stress but we do not treat him for stress-related issues."

In order to gain a better understanding of your current restrictions and limitation and clarify the medical information we obtained regarding your condition, your file was referred to our medical consultant for review. This review noted that the medical records received as recently as May 15, 2006, Dr. Ross assigned a New York Heart Association (NYHA) cardiac classification of Class 1, which equates to no limitation of activities with an ejection fraction of 68%. The medical consultant who reviewed your file agreed with Dr. Davis' assignment of sedentary work capacity and further indicated that he was not able to identify any information within the medical records to support Dr. Davis' prohibition of work and stress.

While the records from Dr. Ross mention an orthopedic condition, when we spoke on May 15, 2006 you stated you did not treat regularly for your back. On February 9, 2007 you reported you attended several physical therapy sessions and did not experience any relief in symptoms. Although you may experience symptoms related to an orthopedic condition, the information in the file does not support a level of impairment which would preclude you from performing sedentary duties.

The U.S. Department of Labor's Dictionary of Occupational Titles defines sedentary work as exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

In addition to the medical information a vocational review of your file was conducted. A vocational analysis of your capabilities, training, education, and experience identified the following transferable skills which could be used to pursue physically appropriate positions:

- Extensive knowledge of operations and management within the specialty chemical industry to direct the development and management of the entire infrastructure of the company,
- Skill and experience in strategic planning, and the ability to take decisive action to adjust to changes/trends in a highly global industry,
- Skill and experience in examining and analyzing statistical data to budget profit and loss objectives,
- Exceptional verbal/written communication skills to direct and mentor management team members to effectively execute operational/sales/distribution procedures to ensure high levels of customer satisfaction and customer retention, and
- Skill and experience with contract negotiations, company promotion, and planning to ensure the company maintains solid market share.

The vocational consultant who completed the review of our claim has identified positions within your restrictions and limitations available within the chemical industry:

- Assistant Director of Membership Marketing, American Chemistry Society

**GOLDEN 0000615**

- Manager of Marketing & Communications, American Chemistry Society

The salary range for these sedentary positions would be from $100,000 to $150,000 per year, plus bonus. Based on your pre-disability income average of $18,974.00 per month, we have determined that a gainful income would be approximately $136,000.000 per year.

Additionally, the vocational consultant also indicated you had the necessary skills and abilities to act as a process consultant within the specialty chemical industry to assist companies improve production, growth, and profits. You would also be qualified to take on the role of a Chief Operations Officer, allowing the CEO and Sales/Marketing staff to perform travel functions.

Mr. Golden, based on the physical and vocational information we have obtained, you no longer meet the policy's definition of disability and we are unable to consider your claim for further benefits. Your claim is closed as of the date of this letter. Under separate cover you will receive benefits due to you from February 1, 2007 to February 15, 2007.

If you disagree with our decision, you may request in writing a review of the denial within 180 days after receiving this notice of denial.

You may submit written comments, documents, records or other information relating to your claim for benefits, and may request free of charge copies of all documents, records, and other information relevant to your claim for benefits.

We will review your claim on receipt of the written request for review, and will notify you of our decision within a reasonable period of time but not later than 45 days after the request has been received. If an extension of time is required to process the claim, we will notify you in writing of the special circumstances requiring the extension and the date by which we expect to make a determination on review. The extension cannot exceed a period of 45 days from the end of the initial review period.

If a period of time is extended because we did not receive information necessary to decide your claim, the period for making the decision on review is tolled from the date we send notice of the extension to you until the date on which you respond to the request for additional information. You will have 45 days to provide the specified information.

You may have the right to bring a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), §502(a) following an adverse determination on review.

Your request for a review should be addressed to:

Sun Life Financial
Appeals Unit
PO Box 81601
Wellesley Hills, MA  02481-0006

As discussed during our conversation on February 9, 2007 the company is willing to consider a

GOLDEN 0000616

financial resolution in order to assist you during this period of transition. Mr. Golden, Sun Life Financial is willing to offer you 6 months of transitional benefits for a total of $18,786.00. If you are interested in this alternative resolution, please contact me at 1-877-260-9778, ext. 8208 in order to discuss this further. If we do not hear from you by February 28, 2007 we will assume you are not interested in discussing an alternative resolution.

Sincerely,


Julie-Ann Baumer
Senior Benefit Analyst

GOLDEN 0000617

## Powell, Kim E.

| | |
|---|---|
| **From:** | Casey, Steven |
| **Sent:** | Wednesday, May 21, 2008 5:24 PM |
| **To:** | Powell, Kim E. |
| **Subject:** | FW: |
| **Attachments:** | Stipulation.rtf |

this and the attachment are Exhibit B to the Declaration.

---

**From:** Casey, Steven
**Sent:** Monday, April 07, 2008 4:30 PM
**To:** 'Jenifer Wallis'
**Cc:** 'Tom Sinclair'; 'James T. Finnigan (jfinnigan@richmaylaw.com)'; 'Headrick, Russell'; 'Hall, David'
**Subject:**

Jenifer,

Attached is a stipulation in the fashion of what we discussed last week.  We have the permission of Mr. Hall to add his signature "electronically".

May I forward to you a stipulation for dismissal now?

Steve

**Steven F. Casey**
**Balch & Bingham LLP**
1901 Sixth Avenue North, Ste. 1500
Birmingham, Alabama 35203-4642
(205) 226-3454 - Phone
(205) 488-5848 - Fax
Download vCard
www.balch.com

IRS CIRCULAR 230 DISCLOSURE: Unless explicitly stated to the contrary,  this communication (including any attachments) is not intended or written to  be used, and cannot be used, for the purpose of (i) avoiding penalties under  the Internal Revenue Code or (ii) promoting, marketing, or recommending to  another party any transaction or matter addressed herein. Click here for more information.

CONFIDENTIALITY NOTE: This email and any attachments may be confidential and protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the e-mail or any attachment is prohibited. If you have received this email in error, please notify us immediately by replying to the sender and deleting this copy and the reply from your system. Thank you for your cooperation.



THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HERBERT JACK GOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  2:08-CV-70-WKW |
| | ) | |
| SUN LIFE FINANCIAL, INC.; | ) | |
| SUN LIFE ASSURANCE | ) | |
| COMPANY OF CANADA; PEER | ) | |
| REVIEW ANALYSIS, INC.; | ) | |
| MCMC, LLC; and THE SEYDEL | ) | |
| COMPANIES EMPLOYEE | ) | |
| BENEFIT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION OF DEFENDANTS MCMC LLC AND
## SUN LIFE ASSURANCE COMPANY OF CANADA

Defendants MCMC LLC ("MCMC") and Sun Life Assurance Company of Canada ("Sun Life Assurance") stipulate as follows:

1.      On or about January 30, 2003, Sun Life Assurance requested that MCMC have one of its doctors review the claim of Herbert J. Golden for long-term disability ("LTD") benefits.

2.      On or about February 7, 2003,  MCMC provided Sun Life Assurance with a Case Report prepared by Dr. Mark Friedman containing Dr. Friedman's recommendations about Mr. Golden's claim. That Case Report constituted the only involvement MCMC had with Mr. Golden's claim.

3.      MCMC was not authorized to and did not make any decisions with regard to Mr. Golden's eligibility for LTD benefits as such decisions were made solely by Sun Life Assurance.

/s/ Steven F. Casey
Steven F. Casey
Balch & Birmingham LLP
1901 Sixth Avenue North, Ste. 2700
Birmingham, AL 35203-2015
Telephone: (205) 226-3454
Facsimile: (205) 488-5848
scasey@balch.com

Attorneys for MCMC LLC


/s/ David B. Hall
David B. Hall
Julie C. Metheny
Baker, Donelson, Bearman, Caldwell
& Berkowitz, P.C.
420 North 20th Street, Suite 1600
Birmingham, AL 35203

Attorneys for Sun Life Assurance
Company of Canada and Sun Life
Financial, Inc.

Dated:_____, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on _____, 2008, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis
Campbell, Gidiere, Lee, Sinclair & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209

Charles A. Stewart III
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104

Amelia T. Driscoll
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, AL 35203


/s/ Steven F. Casey
Steven F. Casey

3