IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HERBERT JACK GOLDEN; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 2:08-cv-70-WKW |
| | ) |
| SUN LIFE FINANCIAL, INC.; | ) |
| SUN LIFE ASSURANCE COMPANY OF | ) |
| CANADA; MCMC, LLC; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT MCMC'S MOTION FOR SANCTIONS[1]**

Comes now, Herbert Jack Golden ("Plaintiff"), and files this Response in Opposition to Defendant MCMC's Motion for Sanctions (*See* Doc. No. 36). MCMC's Motion for Sanctions contains numerous factual inaccuracies. First, MCMC's assertion that Plaintiff failed to submit the required Rule 56(f) affidavit is incorrect. Second, Plaintiff has produced (and cited to) evidence that Sun Life used MCMC's services and information to deny Plaintiff's claim for benefits. Finally, Plaintiff cannot be deemed to have named MCMC as a Defendant and opposed MCMC's Motion for Summary Judgment in bad faith where Plaintiff attempted to assess MCMC's allegations that it is an improper party to this case (notwithstanding the documents evidencing its involvement in the denial of Plaintiff's claim for LTD benefits) by a review of the Services Agreement between MCMC and the Sun Life Defendants – a potential path to resolution deemed agreeable by MCMC prior to its filing of a responsive pleading to Plaintiff's Complaint.

1

## I. PERTINENT FACTS

### A. Date of Disability to Claim for Benefits.

Plaintiff's occupation – until his disability in 2001 – was President and COO of Seydel International, a position he held for approximately five years. *See* Doc. 1, Complaint at p. 5. In August 2001, Plaintiff underwent left heart catheterization, coronary angiography and left ventriculography – which yielded a diagnosis of artherosclerotic coronary disease with significant obstruction and left ventricular dysfunction. *Id.* As a result of his disability, Plaintiff was forced to discontinue his job. *Id.* Plaintiff was subsequently diagnosed with obstructive coronary artery disease, cardiac arrhythmia, cardiomyopathy, mitral regurgitation, hyperlipidemia, hypertension, carotid bruits and herniated nucleus pulposus. *See* Doc. No. 1, Complaint at pp. 5-10. Plaintiff's diagnoses resulted in the prescription of numerous drugs, each with various side effects, and surgeries, including a laminotomy and microdiskectomy. *Id.* at p. 9. Plaintiff's disability is so apparent that a private investigator hired by the Sun Life Defendants to investigate Plaintiff noted the Plaintiff "seemed to have trouble breathing after conversing." *Id.* at p. 11.

Plaintiff filed a claim for Long Term Disability ("LTD") benefits on The Seydel Companies Employee Benefit Plan on or about September 24, 2001. *Id.* Defendants paid Plaintiff LTD benefits until February 15, 2007. *Id.* at p. 12.

### B. Documents Produced by Sun Life.

By letter dated September 28, 2007, Plaintiff requested, pursuant to 29 U.S.C. § 1132(c), a copy of all "relevant" documents as that term is defined within 29 C.F.R. § 2560.503-1, from

---

[1] Although MCMC styled its Motion as a "Reply Memorandum of Defendant MCMC LLC to Plaintiff's Opposition to Motion for Summary Judgment" (Doc. No. 36), Plaintiff refers to it herein as a Motion for Sanctions because in that Motion, for the first time, MCMC seeks sanctions. *See* Fed. R. Civ. P. 11(c).

Sun Life. *See* Doc. No. 1, Complaint at p. 12. The documents produced by the Sun Life Defendants, under cover of letter dated December 14, 2007, include those documents attached as Exhibit E to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment. *See* Doc. No. 32-2, *Exhibit E to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment*, at pp. 23-40.

These documents include a "Case Report for Sun Life Financial" prepared on MCMC's Peer Review Analysis division letterhead. *Id.* at pp. 24-27. The Case Report indicates that it was prepared by Dr. Mark Friedman and contains the following quotation:

> Initially the claimant had significant limitation in his physical ability due to dyspnea however with proper diet, exercise and appropriate medical therapy the claimant seems to have improved significantly. The claimant had an exercise stress test in 09/2002 that demonstrated a ten minute exercise tolerance and he achieved 92 percent of his predicted maximum heart rate. This objective measure of the claimant's exercise ability is sufficient to classify the claimant's current Clinical Class with respect to the Hypertensive Cardiovascular Disease and Left Ventricular Dysfunction as Class I to at most class II. The claimant is not limited by symptoms [o]f angina pectoris and thus the Clinical Class with respect to his Atherosclerotic Cardiovascular Disease, Coronary Artery Disease is Clinical Class I. Dr. Davis questions the use of the well established New York Heart Association (NYHA) classification of heart disease and the clinical classification used by the NYHA. Dr. Davis claims that this is an older classification scheme that is no longer appropriate. I am not aware of a classification that is more widely accepted than the NYHA classification and with it the designation of clinical class that related to a person[']s symptoms with the degree of physical exertion needed to produce these symptoms. All of the classifications used to identify patients in need of cardiac transplant rely on the clinical classification system described in the NYHA Classification. Dr. Davis questions that claimant's current clinical classification as Class I, as stated by Dr. Phillipides, stating that his observation of the claimant would classify the claimant as Class II to Class III symptoms are defined as symptoms that occur with less than normal daily routine activity. At the time of the diagnosis in 2001 the claimant may have been Class III however based on the claimant's current evaluation and his exercise duration of ten minutes on an exercise test in 09/2002 the claimant can no longer be classified as Clinical Class III and is probably best classified as Clinical Class I, maybe barely Class II.
>
> Although the claimant has made significant improvement in his clinical condition with diet, exercise and appropriate medical therapy the patient continues to have

3

>evidence for depressed left ventricular function on echocardiograms and on nuclear studies of his ventricular function. In order for the claimant to continue to improve he needs to continue his current regime and he needs to discontinue his cigarette smoking. With evidence for continued left ventricular dysfunction the claimant cannot return to his previous level of vigorous activity and travel required on his job as President of S[e]ydel International. **The claimant's current physical ability, as objectively observed on the stress test of 09/2002, would allow the claimant to do at least sedentary work and probably light work**. The claimant would have restrictions on the work environment and ability to travel by commercial air…

*See* Doc. No. 32-2, *Exhibit E to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment*, at pp. 25-26. (Emphasis added.)

Also included in Sun Life's December 14, 2007 production was a letter from Sun Life to Plaintiff, dated August 10, 2007, providing Sun Life's rationale for terminating Plaintiff's LTD benefits. *Id.* at pp. 41-46. Included in this letter is a verbatim quotation from MCMC's Peer Review Analysis Division Case Report:

>"Initially the claimant had significant limitation in his physical ability due to dyspnea however with proper diet, exercise and appropriate medical therapy the claimant seems to have improved significantly. The claimant had an exercise stress test in 09/2002 that demonstrated a ten minute exercise tolerance and he achieved 92 percent of his predicted maximum heart rate. This objective measure of the claimant's exercise ability is sufficient to classify the claimant's current Clinical Class with respect to the Hypertensive Cardiovascular Disease and Left Ventricular Dysfunction as Class I to at most class II. The claimant is not limited by symptoms [o]f angina pectoris and thus the Clinical Class with respect to his Atherosclerotic Cardiovascular Disease, Coronary Artery Disease is Clinical Class I. Dr. Davis questions the use of the well established New York Heart Association (NYHA) classification of heart disease and the clinical classification used by the NYHA. Dr. Davis claims that this is an older classification scheme that is no longer appropriate. I am not aware of a classification that is more widely accepted than the NYHA classification and with it the designation of clinical class that related to a person[']s symptoms with the degree of physical exertion needed to produce these symptoms. All of the classifications used to identify patients in need of cardiac transplant rely on the clinical classification system described in the NYHA Classification. Dr. Davis questions that claimant's current clinical classification as Class I, as stated by Dr. Phillipides, stating that his observation of the claimant would classify the claimant as Class II to Class III symptoms are defined as symptoms that occur with less than normal daily routine activity. At the time of the diagnosis in 2001 the claimant may have

4

>been Class III however based on the claimant's current evaluation and his exercise duration of ten minutes on an exercise test in 09/2002 the claimant can no longer be classified as Clinical Class III and is probably best classified as Clinical Class I, maybe barely Class II.
>
>Although the claimant has made significant improvement in his clinical condition with diet, exercise and appropriate medical therapy the patient continues to have evidence for depressed left ventricular function on echocardiograms and on nuclear studies of his ventricular function. In order for the claimant to continue to improve he needs to continue his current regime and he needs to discontinue his cigarette smoking. With evidence for continued left ventricular dysfunction the claimant cannot return to his previous level of vigorous activity and travel required on his job as President of S[e]ydel International. **The claimant's current physical ability, as objectively observed on the stress test of 09/2002, would allow the claimant to do at least sedentary work and probably light work**. The claimant would have restrictions on the work environment and ability to travel by commercial air…"

*See* Doc. No. 32-2, *Exhibit E to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment*, at pp. 42-43. (Emphasis added.) The Sun Life denial letter ends with the conclusion that "[t]he medical documentation on file does not support a less than sedentary capacity". *Id.* at p. 45.

        **C.**    **Plaintiff's Attempted Amicable Resolution of MCMC's Issue.**

On January 30, 2008, Plaintiff filed an ERISA Complaint against various entities, including MCMC, based upon the wrongful termination of his LTD benefits. In February 2008, <u>prior to MCMC's response to Plaintiff's Complaint</u>, MCMC and Plaintiff reached an agreement whereby MCMC would provide to Plaintiff the Services Agreement between MCMC and the Sun Life Defendants in exchange for Plaintiff abstaining from moving for a default judgment against MCMC. *See* Exhibit A; *see also* Doc. No. 32-2 at pp. 19-21. This agreement between MCMC and Plaintiff's counsel was an attempt for Plaintiff to assess, <u>prior to MCMC's expenditure of attorney fees</u>, MCMC's assertion that it is not a fiduciary to the Plan at issue, notwithstanding the evidence to the contrary.

The Sun Life Defendants refused to allow MCMC to produce the Agreement. *See* Exhibit A; *see also* Doc. No. 32-2 at pp. 19-21. After the Sun Life Defendants refused to allow MCMC to produce the Services Agreement, MCMC filed a Motion for Summary Judgment. *See* Doc. No. 18. Then, in their Reply Brief to Plaintiff's Response in Opposition, MCMC requested sanctions, thus necessitating this Response.

## II.    FACTUAL INACCURACIES IN MCMC'S MOTION FOR SANCTIONS

In replying to Plaintiff's Response to MCMC's Motion for Summary Judgment, MCMC – for the first time – moved for sanctions against Plaintiff for allegedly acting in bad faith in naming MCMC as a Defendant and opposing MCMC's Motion for Summary Judgment. MCMC's Motion for Sanctions, however, contains factual misstatements that Plaintiff addresses herein. First, MCMC's assertion that Plaintiff failed to submit the required Rule 56(f) affidavit is incorrect. Second, Plaintiff did submit (and cite to) evidence that Sun Life used MCMC's services and information to deny his claim for benefits. Finally, Plaintiff cannot be deemed to have named MCMC as a Defendant and opposed MCMC's Motion for Summary Judgment *in bad faith* where Plaintiff attempted, prior to MCMC's appearance in this action and in a show of good faith, to assess MCMC's allegations by a review of the Services Agreement between MCMC and the Sun Life Defendants – a potential path to resolution to which MCMC originally agreed upon.

### A.    Plaintiff Submitted the Required Rule 56(f) Affidavit.

MCMC states Plaintiff's attorney has not met the requirements of Fed. R. Civ. P. 56(f), which requires the party opposing the motion for summary judgment to submit an affidavit showing that it cannot "for reasons stated present by affidavit facts essential to justify the party's opposition[.]" However, Exhibit A to Plaintiff's Response in Opposition to MCMC's Motion for

6

Summary Judgment is clearly a three-page "Rule 56(f) Affidavit of Jenifer Champ Wallis" that meets the requirements of Fed. R. Civ. P. 56(f). *See* Doc. 32-1, *Exhibit A to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment*, at pp. 2-4.

> **B. Plaintiff Did Cite to Evidence that Sun Life Used MCMC's Services and Information to Deny His Claim for Benefits.**

MCMC states that Plaintiff's "assertion that Sun Life used information provided by MCMC to terminate his LTD benefits … is blatantly false." *See* Doc. No. 36, *MCMC's Motion for Sanctions*, at p. 5. MCMC also states that Plaintiff's assertion "that he has produced evidence that Sun Life used MCMC's services and information to deny his claim for benefits is totally false ... [and that Plaintiff] does not cite to any such evidence, and … there is no document in the record that supports even an inference to that effect." *Id.* at p. 2. However, Exhibit E to Plaintiff's Response in Opposition to MCMC's Motion for Summary Judgment contains both MCMC documents and Sun Life's seven (7) page letter to Plaintiff dated August 10, 2007, providing its reasons for denying Plaintiff's claim. *See* Doc. No. 32-2, *Exhibit E to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment*, at pp. 41-46. As is set forth more fully in Section I.b. *supra*, Sun Life's letter quotes *verbatim* MCMC's finding that Plaintiff was capable of working in at least a sedentary capacity. *Id.* at pp. 41-46. Sun Life then concludes its denial letter by stating "[t]he medical documentation on file **does not support a less than sedentary capacity** … [therefore] the information on file no longer supports continued benefit payment. For this reason, no further benefits will be paid and your claim will remain closed." *Id.* at p. 45. (Emphasis added).

> **D. Plaintiff Clearly Acted in Good Faith.**

MCMC's Reply requests sanctions as well as attorney's fees and costs for Plaintiff's bad faith in "maintaining an untenable legal position regarding MCMC's status as a fiduciary."

7

MCMC's attorney's fees and costs, however, might have been avoided (if it is indeed not a fiduciary, which the available documents indicate that it is) if it had abided by its agreement with Plaintiff's counsel and produced the Services Agreement between MCMC and Sun Life prior to its filing a response to Plaintiff's Complaint.  *See* Doc. No. 32-2, *Exhibit D to Plaintiff's Response in Opposition to Defendant MCMC, LLC's Motion for Summary Judgment* at pp. 19-21.  *See also* Exhibit A.

As is discussed *supra*, the limited documents available to Plaintiff (provided only by the Sun Life Defendants – MCMC has not responded to discovery) indicate that MCMC is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) – thus Plaintiff properly named MCMC as a Defendant in this action.  When faced with MCMC's assertion that it should not be included in this case, Plaintiff's counsel attempted to obtain a copy of the Services Agreement between MCMC and Sun Life before MCMC made its appearance in this litigation – in order to determine for themselves whether MCMC's assertions were correct.  *Id.* at pp. 19-21.  *See also* Exhibit A.

Plaintiff's counsel actually agreed to wait until the production of this Services Agreement to move forward with litigation and further agreed to refrain from moving for default judgment against MCMC, despite their untimely response to Plaintiff's Complaint, in an effort to ascertain the validity of MCMC's assertions.  *Id.* at pp. 19-21.  *See also* Exhibit A.  MCMC apparently utilized the additional time to draft its Motion for Summary Judgment and refused to produce the Services Agreement.  *Id.*  Plaintiff's counsel actually waited so long for MCMC to produce the Services Agreement that the remaining counsel of record were required to schedule the Rule 26 Parties' Planning Meeting – before MCMC had ever responded to Plaintiff's Complaint.  *Id.*

MCMC's attorney fees incurred thus far could may been avoided if it had produced the Services Agreement pursuant to its agreement with Plaintiff's counsel **and if that Services Agreement makes clear that MCMC performed no function rising to a "fiduciary" level of the Plan at issue**.

## III. SANCTIONS ARE NOT WARRANTED

MCMC's Motion for Sanctions should be denied because Plaintiff's claims against MCMC are not violative of Fed. R. Civ. P. 11 and MCMC failed to afford Plaintiff the procedural safeguards mandated by Fed. R. Civ. P. 11.

### A. Plaintiff's Claims are not Violative of Fed. R. Civ. P. 11.

Sanctions are not warranted here, where Plaintiff's claims have evidentiary support and are reasonable under the circumstances. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) ("The objective standard for assessing conduct under Rule 11 is 'reasonableness under the circumstances.'"). As is discussed more fully in Plaintiff's Response to MCMC's Motion for Summary Judgment (*See* Doc. No. 32), ERISA provides that a "fiduciary" is anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises any authority or control respecting management or disposition of [the plan's] assets, [or] has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A). Moreover, "the term 'fiduciary' is to be liberally construed" due to the "remedial purposes of ERISA." *Eslava v. Gulf Telephone Co., Inc.*, 418 F. Supp. 2d 1314, 1321 (S.D. Ala. 2006). Given the definition of "fiduciary" provided by ERISA and its liberal construction, the limited documents available to Plaintiff provide objective support that MCMC performed functions that rise to a "fiduciary" level of the Plan at issue. Plaintiff's claims against MCMC are reasonable under the circumstances and Rule 11

9

sanctions are therefore inappropriate. Moreover, MCMC has failed to afford Plaintiff the procedural safeguards mandated by Fed. R. Civ. P. 11.

### B.    MCMC has failed to Comply with Fed. R. Civ. P. 11(c).

Fed. R. Civ. P. 11(c) provides that "[a] motion for sanctions … must be made separately from other motions or requests[.]" The 1993 Advisory Committee Notes to Fed. R. Civ. P. 11 emphasize this requirement – "requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion." Rule 11 and its Advisory Committee Notes further make clear that "[t]he motion for sanctions is not … to be filed until at least 21 days … after being served." MCMC's inclusion of its request for Rule 11 sanctions in a Reply memorandum (to which Plaintiff would otherwise be afforded no response) does not afford Plaintiff the procedural safeguards mandated by Fed. R. Civ. P. 11. MCMC's request for Rule 11 sanctions should therefore be denied on this ground alone.

### CONCLUSION

Wherefore, for the reasons set forth herein as well as those reasons set forth in Plaintiff's Response in Opposition to MCMC's Motion for Summary Judgment (*See* Doc. No. 32), Plaintiff respectfully requests this Honorable Court deny MCMC's Motion for Sanctions.

    Respectfully submitted,

    /s/ *Thomas O. Sinclair*
    Thomas O. Sinclair (SIN018)
    tsinclair@cgl-law.com

    /s/ *Jenifer Champ Wallis*
    Jenifer Champ Wallis (WAL191)
    jwallis@cgl-law.com
    Attorneys for Plaintiff

OF COUNSEL:
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Telephone:  (205) 803-0051
Facsimile:   (205) 803-0053

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 28th day of May, 2008, a copy of the foregoing was filed electronically using this Court's electronic filing system.  Notice of this filing is due to be served by operation of the Court's electronic filing system to the following parties indicated on the electronic filing receipt as participants in the Courts CM/ECF system:

>David B. Hall, Esq.
>Julie C. Metheny, Esq.
>BAKER DONELSON
>420 North 20th Street, Suite 1600
>Birmingham, AL 35203
>
>Christopher Morris, Esq.
>BAKER DONELSON
>One American Place
>301 North Main Street, Suite 810
>Baton Rouge, LA 70825
>
>Steven F. Casey, Esq.
>BALCH & BINGHAM LLP
>1901 Sixth Avenue North, Suite 2700
>Birmingham, AL 35203

>/s/ *Jenifer Champ Wallis*
>Of Counsel

# EXHIBIT

# "A"

EXHIBIT "A"

# Tom Sinclair

| | |
|---|---|
| **From:** | James T. Finnigan [JFinnigan@richmaylaw.com] |
| **Sent:** | Monday, March 17, 2008 2:37 PM |
| **To:** | Tom Sinclair |
| **Cc:** | Millerick, Robert |
| **Subject:** | RE: Golden v. Sun Life Financial, Inc. et al. |

Yes.

James T. Finnigan
Rich May, a Professional Corporation
176 Federal Street
Boston, MA 02110-2223
T - (617) 556-3872
F - (617) 556-3891
email: jfinnigan@richmaylaw.com
website: www.richmaylaw.com

This e-mail message and any attachment are confidential and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an e-mail to postmaster@richmaylaw.com -- and destroy all copies of this message and any attachments. Thank you.

IRS CIRCULAR 230 NOTICE
In compliance with IRS requirements, any tax advice contained in this communication and/or in any attachment is not intended to be used and cannot be used for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.

**From:** Tom Sinclair [mailto:tsinclair@cgl-law.com]
**Sent:** Monday, March 17, 2008 1:29 PM
**To:** James T. Finnigan
**Cc:** Kimberly Hendrix; Jenifer Wallis
**Subject:** RE: Golden v. Sun Life Financial, Inc. et al.

Jim-

I don't see that we memorialized an additional time extension so please correct me if I am wrong but I believe your clients were to answer on or before the 21st of March (this Friday). Was that indeed our agreement?

Thanks

Tom

Thomas O. Sinclair
TSinclair@CGL-Law.com
Campbell, Gidiere, Lee, Sinclair & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
205.803.0051
800.540.1311
205.803.0053(fax)

www.cgl-law.com

The information contained in this message may be attorney-client privileged and contain confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this

1

communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete the original message. Thank you.

---

**From:** Tom Sinclair
**Sent:** Thursday, February 21, 2008 3:07 PM
**To:** 'James T. Finnigan'
**Cc:** Millerick, Robert; Kimberly Hendrix; Jenifer Wallis
**Subject:** RE: Golden v. Sun Life Financial, Inc. et al.

Received and agreed that we will not seek a default before 3/14 for your clients failure to answer.

Tom

Thomas O. Sinclair
TSinclair@CGL-Law.com
Campbell, Gidiere, Lee, Sinclair & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
205.803.0051
800.540.1311
205.803.0053(fax)

www.cgl-law.com

The information contained in this message may be attorney-client privileged and contain confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete the original message. Thank you.

---

**From:** James T. Finnigan [mailto:JFinnigan@richmaylaw.com]
**Sent:** Thursday, February 21, 2008 3:03 PM
**To:** Tom Sinclair
**Cc:** Millerick, Robert
**Subject:** Golden v. Sun Life Financial, Inc. et al.

Tom:

Thanks for the courtesy of extending the time in which MCMC has to respond to the complaint for twenty days from today. That would make MCMC's response due on March 13.

I just spoke with Russell Headrick and asked him to check with his client to see if I could provide you with a copy of the contract with Sun Life or the relevant portions thereof to show that MCMC had no fiduciary responsibilities with respect to benefit determinations that might be made by Sun Life and only provided recommendations about benefits. Russell said he would do that and get back to me. Once I have heard from him I will be in touch.

Jim

2

James T. Finnigan
Rich May, a Professional Corporation
176 Federal Street
Boston, MA 02110-2223
T - (617) 556-3872
F - (617) 556-3891
email: jfinnigan@richmaylaw.com
website: www.richmaylaw.com

This e-mail message and any attachment are confidential and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an e-mail to postmaster@richmaylaw.com -- and destroy all copies of this message and any attachments. Thank you.

IRS CIRCULAR 230 NOTICE
In compliance with IRS requirements, any tax advice contained in this communication and/or in any attachment is not intended to be used and cannot be used for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.